BECKER and wife, Respondents, vs. SPALINGER and wife, Appellants.

*May 6—May 31, 1921.*

*Principal and agent: Agent accepting secret commission from adverse party: Fraud: Rescission of transaction: False representations: Statements as to value.*

1. Where plaintiff sought the advice of the manager of a trust company, who was an attorney, as to the advisability of purchasing a certain farm, and while acting as agent for plaintiff the manager advised against a purchase which plaintiff was considering and called attention to and recommended the purchase of defendant's farm, hurried along its inspection, and said nothing regarding an abstract of title, and during all this time he was, without plaintiff's knowledge, in reality agent for the defendant, the failure to disclose the true relationship existing between the manager and the defendant constituted a fraud on plaintiff warranting the annulment of a contract of exchange of lands between him and defendant.

2. Having been hired as plaintiff's agent it was the duty of the attorney to advise him with respect to the transaction in question and to bring home to plaintiff knowledge of his engagement as an agent for compensation on the part of defendant, and, having failed to do so, he was guilty of disloyalty toward the plaintiff entitling plaintiff to rescind the entire transaction.

3. A representation by one making an exchange of lands that he had been offered $7,000 for his property, if false, constituted a fraud warranting rescission.

APPEAL from a judgment of the circuit court for Sheboygan county: CHESTER A. FOWLER, Judge. *Affirmed.*

*Ernst Becker* and *Lena Becker,* his wife, plaintiffs, on the 8th day of May, 1918, were the owners in fee of the north half of lots 1 and 2 in block 18 of Swift's addition in the city of Sheboygan, in Sheboygan county, Wisconsin, which real estate was incumbered by a mortgage in the sum of $1,741.

On said day the defendant *Jacob Spalinger* was the owner in fee of the north half of the northwest quarter of section 10, township 14, range 20, in Sheboygan county, Wisconsin, which said real estate was incumbered by a mortgage in the sum of $2,000.

There was situated on plaintiffs' real estate a two-story dwelling house, occupied in part by plaintiffs as a homestead. The farm of defendants consisted of a rocky, stony, hilly piece of land, of which not to exceed fifteen acres had been cultivated or was subject to cultivation.

Plaintiff *Ernst Becker* is about thirty years of age, and for a period of about five years prior to May, 1918, was employed as a motorman and conductor for the street-car company at Sheboygan, Wisconsin. Neither he nor his wife had had any experience in farming, and were not familiar with the value of farm lands, either in Sheboygan county or elsewhere.

A few days prior to the 8th day of May, 1918, plaintiffs called upon one Otto Bassuener, a resident of the city of Sheboygan, a lawyer and the manager of the Sheboygan Mortgage & Trust Company, for the purpose of taking him with them to a farm in the neighborhood of Antigo, Wisconsin, so that he might advise them with respect to the value of a certain farm and the suitability of such farm for farming purposes. The trip to Antigo and vicinity was undertaken, the farm inspected, and plaintiffs were advised by Bassuener against investing in a farm in that locality, and that they could purchase a farm in Sheboygan county

which was considerably better.    Plaintiffs paid Bassuener
for making this trip to Antigo with them.

The next morning Bassuener called upon plaintiffs with
an automobile and took them to the farm of the defendant
*Spalinger* in the town of Mitchell in Sheboygan county.
The plaintiffs, together with Bassuener, then spent about
twenty-five to thirty minutes upon *Spalinger's* farm, view-
ing but a small portion of it, and also making some examina-
tion as to the condition of the house and the barn upon the
farm.    Bassuener, on the occasion of that visit, made the
statement that he was in a hurry to get back; that he had
a lot of work on hand.

After this short visit to the farm Bassuener took plaint-
iffs in his automobile to the farm that *Spalinger* then oc-
cupied and which was located a short distance from the farm
in question.    The parties were there introduced and had
supper, and arrangements were then made for the parties
to meet in the city of Sheboygan on the following morning
so that an agreement for exchange of properties could be
entered into and perfected.

The following morning *Spalinger* and his wife arrived
at plaintiffs' residence in the city of Sheboygan and there
the proposed exchange was discussed.    On that occasion
*Spalinger* stated to plaintiffs that he wanted $7,000 for his
farm; that it was worth $7,000; and that he had been offered
$7,000 for the farm, and that he could get that amount for
it any time.    There was some discussion also with respect
to the value of plaintiffs' property, *Ernst Becker* claiming
that it was worth $3,000 in cash, and that it ought to bring
$4,000 in a trade.

The plaintiffs relied upon the representations made by
the defendant *Jacob Spalinger* with respect to the value of
the farm and the offer which he claimed he had received
for the same.    Plaintiffs also called defendants' attention to

the fact that there were certain outstanding and unpaid special assessments on their property, amounting to somewhere in the neighborhood of $200.

On the same day the parties met at the office of Mr. Bassuener, in Sheboygan, and there the papers were made for the exchange of the properties.

The testimony shows that the plaintiffs' house and lots in Sheboygan were worth $3,000, and that the same were incumbered by mortgage for $1,740, and that, excluding taxes, the equity of plaintiffs in the house and lots was worth about $1,250.

The testimony shows that the defendant *Jacob Spalinger's* farm was worth not to exceed $1,500, and that only fifteen acres of such land were capable of cultivation, and that the land was incumbered by a mortgage in the sum of $2,000.

At Bassuener's office the parties entered into and executed a land contract for the exchange of their properties, by which the plaintiffs agreed to pay to the defendants, in addition to conveying their property, the sum of $5,000. The plaintiffs executed a quitclaim deed of their property to the defendant *Jacob Spalinger,* subject to the mortgage of $1,740, so that the defendant *Jacob Spalinger* received an equity of about $1,250, and in addition thereto was to receive the sum of $5,000 as aforesaid.

Prior to the time that the plaintiffs and Bassuener took the trip to Antigo the defendant *Jacob Spalinger* had requested Bassuener to secure a purchaser for the eighty-acre farm in question and agreed at the time to pay him for his services, and after the consummation of the exchange of properties herein referred to, in compliance with such agreement, the said defendant *Jacob Spalinger* paid to the said Bassuener for his services in procuring a purchaser for said farm the sum of $80. The plaintiffs at no time were informed of this arrangement between the defendant *Jacob Spalinger* and Bassuener nor of the payment of such commission.

It was also found by the court, and the testimony shows, that some personal property passed in the deal, for about $450 extra, but that the defendant *Jacob Spalinger* took a chattel mortgage on this, and in the following January took the property on the mortgage, deeming himself insecure, he buying in the property himself on the sale for less than the mortgage, and failing to account to the plaintiffs for the sale and filing no report of sale.

The trial court found, among other things, and such findings are fully supported by the evidence, as follows, to wit:

(a) That to induce said trade the defendant *Jacob Spalinger,* with intent to defraud, falsely represented his farm to be worth $7,000; that said statement was not meant as one of opinion, but was meant to be taken and was understood by the plaintiffs as one of fact, and was believed and relied on by them as such.

(b) That the plaintiffs at the time had no knowledge of farming or farm lands, were ignorant of the value of lands like defendants'; and that they were simple, inexperienced, credulous, unsuspicious, and confiding people.

(c) That the plaintiffs went upon the land of defendants and examined it as much as they wished, and took no means or pains to ascertain the truthfulness of statements of value made.

(d) That plaintiffs, after the said exchange of properties had been perfected, went into possession of the farm and remained in possession of said farm until January, 1919, when they abandoned the same.

(e) That defendants took possession of plaintiffs' property in the city of Sheboygan on or about May 8, 1918, and have since that time collected the rentals thereof.

(f) That the sum collected for rentals by the defendants amounts to $450; that defendants have paid out in taxes $278.63; in reduction of the mortgage and interest the sum of $477.39; for repairs the sum of $24.60; for improvements $76.65; insurance and water tax $28.76; and that the total

value of the use of defendants' farm during the period that plaintiffs occupied the same amounts to the sum of $60; and that from the foregoing figures there is a balance due to the defendant *Jacob Spalinger* in the sum of $496.03.

(g) That in October, 1918, the plaintiffs tendered to the defendant *Jacob Spalinger* a quitclaim deed of the eighty acres and demanded of him a reconveyance of their said property in the city of Sheboygan, at the same time presenting to him a proper deed of conveyance for execution, and at the same time notified the said *Spalinger* that they rescinded the said exchange of properties.

(h) That the said *Spalinger* refused to comply with the requests and demands of the said plaintiffs.

As conclusions of law the court found that upon plaintiffs' delivering into court for defendants their said deed tendered to them and upon the payment into court of the sum of $496.03, less the taxable costs and disbursements of the action, within sixty days from the date of such findings, the plaintiffs be entitled to judgment declaring void and annulling the said contract of exchange and the said deed from plaintiffs to the defendant *Jacob Spalinger,* and canceling the same of record, and to the restoration of plaintiffs' premises.

Judgment was thereupon entered in accordance with said findings, from which judgment defendants appealed.

The cause was submitted for the appellants on the brief of *Francis Williams* of Sheboygan, and for the respondents on that of *M. C. Mead* of Plymouth.

DOERFLER, J. The question involved in this case is whether a fraud was perpetrated by the defendant *Jacob Spalinger* at the time the exchange of properties in question was made. Bassuener was a lawyer and the manager of the Sheboygan Mortgage & Trust Company. The plaintiffs sought his advice as to the advisability of purchasing the farm in the vicinity of Antigo. His services were secured

and paid for, and he thereby became and was constituted the agent of the plaintiffs.

While on the trip to Antigo, Bassuener, while acting as the agent for the plaintiffs, called attention to and recommended the purchase of the eighty-acre farm in question. Pursuant to arrangements previously made, on the day following the return of the parties from their Antigo trip Bassuener called upon them with his automobile and took them to the farm and was present while such farm was inspected.

The plaintiffs at all times had good reason to believe that Bassuener was acting as their agent in this matter. While at the farm Bassuener hurried along the inspection and confined the same to a period of about half an hour, claiming that he was very busily engaged in important work which required his attention.

The parties met on the following day at Bassuener's office and the exchange papers were drafted and executed. It does not appear in the evidence that anything whatsoever was said regarding an abstract of title to the Sheboygan property. Bassuener, as a real-estate agent and an attorney, was presumed to know the usual practice in transactions of that kind with respect to examination and delivery of an abstract of title.

The matter of outstanding and unpaid special assessments on the Sheboygan property was discussed, but neither the defendant *Jacob Spalinger* nor his agent, Bassuener, ever suggested the ascertaining of the exact amount of these outstanding and unpaid assessments, notwithstanding the fact that the information was available at the office of the city treasurer in the city of Sheboygan.

Notwithstanding the fact that Bassuener led the plaintiffs to believe that he was acting in their behalf and in their interests as their agent, Bassuener during all these transactions had been hired for a compensation to act as the agent

for the defendant *Jacob Spalinger,* and at no time did the defendant *Jacob Spalinger,* or Bassuener, notify the plaintiffs that he, Bassuener, was acting as the agent of the defendant *Jacob Spalinger* in the sale of this farm.

The conduct of Bassuener during the time the farm was inspected, in itself constitutes a rather insignificant incident, but becomes significant in connection with all the other facts and circumstances in the case. It becomes important when we consider his failure and the failure of *Jacob Spalinger* to require an abstract of the property, or with respect to the precise amount of the outstanding special assessments. These facts, together with the relationship that existed between *Jacob Spalinger* and Bassuener, and which relationship at no time was divulged to the plaintiffs, constitute fraud, which in itself is amply sufficient to warrant the judgment of the lower court.

"It is the established law that the acceptance by an agent of a secret commission of compensation from the opposite party, where the agent is to exercise, on behalf of his principal, skill and judgment, vitiates the contract, and the principal who has thus been imposed upon may rescind the contract, even though the other party paid the commission or compensation in good faith." Mechem, Agency (2d ed.) § 2138. Cited with approval in *Weinhagen v. Hayes, ante,* p. 233, 178 N. W. 780, 183 N. W. 162.

Absolute fidelity and loyalty to the interests of his principal is the first duty and the highest obligation of an agent.

Having been hired as plaintiffs' agent, it was the duty of Bassuener to advise them with respect to the transaction in question. It was further his duty to bring home to the plaintiffs knowledge of his engagement as an agent for compensation on the part of the defendant *Jacob Spalinger.* Having failed to do this, he was guilty of disloyalty towards the plaintiffs, and this formed a sufficient basis for the rescission of the entire transaction.

At the time the negotiations transpired in the city of She-

boygan for the exchange of these properties, the testimony shows that the defendant *Jacob Spalinger* stated that his farm was worth $7,000 and that he had been offered $7,000 for the farm. We find that the latter statement was made, under the clear preponderance of the credible evidence in the case, and that statement in itself, if false, constitutes a fraud warranting rescission.

In 20 Cyc. 59, it is said:

"Statements by a vendor that a third person has offered him a certain sum for the property is a statement of a material fact affecting the value and may form the basis for an action of deceit."

Whether the mere statement made by the defendant *Jacob Spalinger,* and as found by the court, namely, that his farm was worth $7,000, was a statement of fact or a statement of opinion, it is not necessary for us to decide. However, considering the inexperience of the plaintiffs with respect to farming and the value of farm lands, and the simplicity of their minds as shown by the short investigation made of the entire transaction, and the credulity of these plaintiffs, and particularly in connection with all the other facts and circumstances of the case, we are strongly inclined to hold that such a statement must be considered as a statement of fact rather than a statement of opinion.

It is said in the case of *Miranovitz v. Gee,* 163 Wis. 246, 157 N. W. 790:

"A study of the cases suggests the thought that, in the absence of an express intent to defraud, the determination of whether or not certain representations are statements of fact or of opinion depends upon whether or not the person to whom the representations are made may, under all the facts and circumstances of the case, including such person's capacity or want of capacity, rely upon them."

The bargain itself was grossly inequitable. Under it the plaintiffs parted with their equity in their property, amounting to $1,250, and agreed to pay the additional sum of

$5,000, for a farm which was incumbered to the extent of $500 in excess of its value. A court of equity, therefore, in view of all the facts and circumstances of this case, will lend its aid in giving relief to the injured party.

*By the Court.*—Judgment affirmed.