[L. A. No. 8050.  In Bank.—August 26, 1925.]

JANSS INVESTMENT COMPANY (a Corporation), Respondent, v. JAMES J. HENRY WALDEN, Appellant.

[1] CONTRACTS—SALE OF REAL PROPERTY—LIMITATION OF USE TO WHITE OR CAUCASIAN RACE—VALIDITY OF.—The provision in a contract for the sale of real property that no part of said property shall ever be used or occupied by any person who is not of the white or the Caucasian race is constitutional and valid.

---

(1) 39 Cyc., p. 1219, n. 99.

APPEAL from a judgment of the Superior Court of Los Angeles County.  T. A. Norton, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Willis O. Tyler for Appellant.

Gibson, Dunn & Crutcher and E. H. Conley for Respondent.

HOUSER, J., *pro tem.*—This is an appeal from a decree in a suit to quiet title.  The facts are not in dispute.  It appears that the plaintiff, Janss Investment Company, is a subdivider of land into town lots; that from one of its subdivisions it sold a lot to defendant Walden under an installment contract which contained as one of its conditions a paragraph of which the following is a copy:

"No part of said real property shall ever be leased, rented, sold or conveyed to any person who is not of the white or Caucasian race, nor be used or occupied by any person who is not of the white or the Caucasian race whether grantee hereunder or any other person."

The contract also provided:

---

1.  Effect of provision in deed discriminating against persons on account of race, color, or religion, note, 9 A. L. R. 120.  See, also, 9 Cal. Jur. 355.

"This contract is not transferable without the written consent of the party of the first part, and then only upon payment of the usual fee of one dollar. . . . "

The contract was entered into on May 3, 1922. On the following day Walden, who was a white man, attempted by a quitclaim deed to convey all his right, title, and interest in the property to defendants Walling, who are negroes. On September 2, 1922, defendant Walden, after having decided that the mode of conveyance used by him was insufficient for his purpose, made an assignment in writing of all his interest to defendant Betty Walling, which attempted assignment, it is conceded by the appellant, failed for the reason that the plaintiff refused to give, and did not give, its consent in writing thereto; nor was the sum of one dollar paid to the plaintiff for making such assignment. However, without reference to the state of the title to the property as between defendant Walden and the defendants Walling, or either of them, no question is raised as to the fact that the Wallings were let into the possession of the lot in question and that at the time the suit was commenced they were in the use and occupation thereof.

At the conclusion of the trial in the lower court judgment was rendered in favor of the plaintiff and defendant Walden has appealed therefrom.

[1] The sole question presented for determination by this court is as to the validity of that part of the condition of the contract between the parties thereto that "No part of said real property shall ever . . . be used or occupied by any person who is not of the white or the Caucasian race. . . . "

If the question were a new one to this court it would demand careful investigation of the legal principles and the authorities presented by appellant in support of his contention touching the constitutionality of the condition set forth in the contract, to which reference has been had. In view, however, of the fact that the identical question has been raised recently in a preceding case and passed upon by this tribunal adversely to appellant's contention in the case at bar, it becomes unnecessary and inadvisable to devote much time or thought to a consideration of the legal points suggested by appellant. We refer to the case of *Los Angeles Investment Co.* v. *Gary,* 181 Cal. 680 [9 A. L. R. 115, 186 Pac. 596]. The facts therein, as stated in the opinion of

the court, were that the plaintiff was the owner of a tract of land which had been subdivided into town lots; that it sold one of such lots to a man named Renaker, who in turn sold it to defendant Gary, who was a negro, and who, with his wife, who was a colored woman, thereafter went into the use and occupation of the property. The deed by which the property was conveyed by the plaintiff therein to Renaker contained a condition " . . . that the said property shall not be sold, leased or rented to any persons other than of the Caucasian race, nor shall any person or persons other than of Caucasian race be permitted to occupy said lot or lots." (The deed there, as the contract here, also contained the usual forfeiture and reversionary clauses for breach of any of its conditions. It will thus be seen that the facts in the two cases are practically identical one with the other.)

The matter seems to have been thoroughly considered both by the court sitting in department and, later, on petition for rehearing, by the court sitting in bank. The conclusion reached, as fairly stated in the syllabus, was that "The provision in a deed that no person or persons other than of the Caucasian race shall be permitted to occupy the property, is not a restraint upon alienation, but upon the use of the property, and is valid."

This court feels itself bound by the ruling reached in that case. The date of the decision was December 11, 1919, since which time it has been considered as settled law in this state and accordingly followed by subdividers of property and by purchasers of town lots and the owners of real property in general. It cannot now be disturbed.

The judgment is affirmed.

Myers, C. J., Waste, J., Lawlor, J., Seawell, J., Lennon, J., and Knight, J., *pro tem.*, concurred.

Rehearing denied.

[L. A. No. 7701.  In Bank.—August 27, 1925.]

W. H. O'DELL, Appellant, v. W. H. HALL et al.,
Respondents.

[1] APPEAL—ALTERNATIVE METHOD—INSUFFICIENT RECORD.—Upon an
appeal under the alternative method from a judgment entered
after sustaining a demurrer to the complaint, where no argument
is made or authority cited in support of the sufficiency of the
complaint, appellant has not printed in his brief, or in the sup-
plement thereto, any portion of the record he would call to the
attention of the supreme court, nor asked for time to print and
file a supplemental brief, there is no record upon which to con-
sider the merits of the appeal.

(1) 3 C. J., p. 1444, n. 1.

APPEAL from a judgment of the Superior Court of
Kern County.  T. N. Harvey, Judge.  Affirmed.

The facts are stated in the opinion of the court.

George M. Cook for Appellant.

Irwin & Laird, Charles del Bondio, Rowen Irwin, Rollin
Laird and T. F. Allen for Respondents.

WASTE, J.—In an action for false imprisonment brought
by the plaintiff against three peace officers of the city of
Taft and the American Surety Company, surety on the
official bond of the defendant city marshal, the defendants
demurred jointly to the second amended complaint.  The
court overruled the demurrer as to the three defendant peace
officers, but sustained it as to the defendant surety, without
leave to amend.  From the judgment thereupon entered in
favor of the Surety Company the plaintiff has appealed.

The appeal is taken under the alternative method.  The
only point or argument made in support of the appeal is
found in appellant's two-page opening brief (the only one
filed), wherein he says: "There is nothing in the record by
which this court may even infer as to or upon what grounds
the judge of the superior court sustained the demurrer of the
American Surety Company."  No argument is made and no
authorities are cited in support of the sufficiency of the

complaint as against the demurrer which was sustained. Appellant has not printed in his brief, or in a supplement thereto, any portion of the record he would call to the attention of this court, nor has he at any time asked·for an extension of time in which to print and file a supplemental brief, as he might have done under section 953c of the Code of Civil Procedure as amended in 1923 (Stats. 1923, p. 748). **[1]** There is, therefore, no record here presented in the manner prescribed by law upon which this court can consider the merits of the appeal.

The judgment is affirmed.

Lawlor, Acting C. J., Lennon, J., Seawell, J., Houser, J., *pro tem.,* Knight, J., *pro tem.,* and Richards, J., concurred.

---

[L. A. No. 8482. In Bank.—August 27, 1925.]

In the Matter of the Estate of EMILE BAUER, Deceased. HAMILTON A. BAUER et al., Appellants, v. LLOYD C. BAUER et al., Executors, etc., Respondents.

[1] ESTATES OF DECEASED PERSONS—REMOVAL OF REMAINS OF DECEASED—CLAIM FOR.—A claim by a son of a deceased person against the latter's estate for the expense incurred by the former, without consultation with or the concurrence or acquiescence of the executrix or executor of the estate, in removing the ashes of the deceased, which had been deposited by direction of the executrix and executor in a niche in a columbarium selected by the deceased, to a new columbarium, is not a proper part of the "funeral expenses" of the decedent within the meaning of that term as employed in the Code of Civil Procedure and is properly disallowed as a claim against the estate.

[2] ID.—DEFINITION OF FUNERAL EXPENSES.—The term "funeral expenses" has reference to those necessary and, in fact, compulsory expenditures, the necessity for which arises immediately upon and after the death of the decedent and which embrace coffining, em-

---

1. Liability of decedent's estate for funeral expenses, note, 33 L. R. A. 660; 52 L. R. A. (N. S.) 1152. See, also, 12 Cal. Jur. 86; 11 R. C. L. 224.

balmment, arraying, and sepulture or cremation of his body, to-gether with those accustomed forms and ceremonies which attend upon the present disposition of his remains.

(1) 24 **C. J.**, p. 307, n. 28.    (2) 24 **C. J.**, p. 307, n. 28.

APPEAL from an order of the Superior Court of Los Angeles County disallowing a claim against the estate of a deceased person. Frank R. Willis, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. Franklin Baxter and Hamilton A. Bauer for Appellants.

J. W. Morin and Morin, Newell & Brown for Respondents.

RICHARDS, J.—This appeal is from an order of the superior court of the county of Los Angeles, sitting in probate, denying the application of the appellants herein for an order directing the allowance and payment of a claim which had theretofore been presented by the appellant Cypress Lawn Cemetery Association, embracing certain charges and expenditures made by it in removal of ashes of the decedent several months after the death and funeral and cremation of the remains of said decedent from their primary place of deposit to another and, it is claimed, more fitting and suitable niche in the said appellant's new columbarium solely upon the request and direction of its coappellant Hamilton A. Bauer, an elder son of said decedent. The additional facts preceding and attending the application for the allowance of said claim and the denial thereof by said court are in substance the following: Emile Bauer, the decedent referred to in appellants' said application, died in the city of Pasadena on June 15, 1923, where for many years he had resided. He had been twice married. He left surviving him his widow by his second marriage and a younger son, the offspring of said marriage. He also left surviving him an elder son by his first marriage, viz., Hamilton A. Bauer, one of the appellants herein. The deceased left an estate of the approximate value of one hundred thousand dollars. Some years prior to his death he had selected a receptacle for the ashes of his deceased

children by his former marriage and for his own remains, which in his will he directed should be cremated. The selected custodian of the ashes of his deceased children and himself was the Cypress Lawn Cemetery Association, one of the appellants herein, and prior to his death the ashes of his said deceased children had by his direction been deposited in a niche in an older columbarium of such association. Upon his decease and after his funeral and the cremation of his remains his surviving widow, who with his said younger son had been named as the executrix and executor, respectively, of his estate, directed the local undertaker to transmit the ashes of her deceased husband to the Cypress Lawn Cemetery Association for deposit in said niche. Her direction in that respect was complied with and the deposit accordingly made. Several months went by when Hamilton A. Bauer, the elder son of the decedent, and one of the appellants herein, deeming the place of deposit of the ashes of his deceased father unsuited to a man of his wealth or station, went upon his own initiative to the said Cemetery Association, selected another niche in its new columbarium, directed an inscription to be prepared and placed upon the urn containing his father's ashes, and upon their transference to the new place of deposit at considerable expense ordered the bill sent to the executrix and executor of his father's estate, whom he had not consulted nor sought the concurrence or acquiescence of in making the foregoing arrangements and in incurring the expense incident thereto. It was the bill of expense thus incurred which, upon presentation, the executrix and executor of said estate refused to pay. Upon the hearing on the application of the appellants for an order compelling the allowance and payment by the estate of said claim Hamilton A. Bauer was the only witness examined and it was upon his testimony to substantially the foregoing facts that the order denying said application was predicated.

[1] The claim for the payment of which the appellants made their aforesaid application to the probate court formed no proper part of the "funeral expenses" of the decedent within the meaning of that term as employed in the Code of Civil Procedure, section 1646. [2] The term "funeral expenses" has reference to those necessary and, in fact, com-

pulsory expenditures, the necessity for which arises immediately upon and after the death of the decedent and which embraces the coffining, embalmment, arraying, and sepulture or cremation of his body, together with those accustomed forms and ceremonies which attend upon the present disposition of his remains. (2 Woerner on Administration, 3d ed., sec. 358.) The term has been held to include the expense of a monument or tombstone over the grave of the deceased (*Fairman's Appeal,* 30 Conn. 205; *Pease* v. *Christman,* 158 Ind. 642 [64 N. E. 90]), but not to include the cost of subsequently inclosing the burial lot (*In re Meyers Estate,* 18 Phila. (Pa.) 42), nor to include the making of a portrait of the deceased (*Appeal of McGlinsey,* 14 Serg. & R. (Pa.) 64), nor to embrace the cost of reinterment unless the first place of interment was found to be improper (*Wilkins* v. *Romine,* 106 Ind. 378 [7 N. E. 193]). In the instant case we must assume in support of the order of the probate court that it made the implied finding that the original place of deposit of the ashes of the deceased was not improper, especially in view of the admitted fact that it was the place selected by the decedent in his lifetime for the deposit of the ashes of his deceased children and of his own ashes upon his decease. The expenditure upon which the appellants' claim is predicated not being properly classed as "funeral expenses" under the particular circumstances of the case, it follows that it was not such an expenditure as might have been ordered by the friends or relatives of the deceased prior to the appointment of an executor or administrator of his estate and which, if reasonable, considering the amount of the estate of the deceased and the circumstances surrounding his death and burial, would be a proper charge against his estate. (*Estate of Hincheon,* 159 Cal. 755, 763 [36 L. R. A. (N. S.) 303, 116 Pac. 47]; 2 Woerner on Administrations, 2d ed., sec. 357; *Francis' Estate,* 75 Pa. St. 220.) Not being such, it is clear that the appellant Cypress Lawn Cemetery Association would have no right to charge against the estate of said decedent the expenses of removing the ashes of the decedent to another place than that of their primary deposit if such removal had been undertaken upon its own initiative, and it would seem to be equally clear that it could not do so when it had taken such

action upon the initiative or direction of a son of the deceased who bore no official relation to those in immediate charge of the affairs and properties of the estate and who had no other authority than that of his own initiative to direct the removal of his father's ashes, long after their primary interment to another place of repose. The question as to who is entitled to the remains or ashes of a deceased person is one to which much learning has been applied, particularly in the more ancient precedents, as may be seen from the notes to *Wynkoop* v. *Wynkoop,* 42 Pa. 293 [82 Am. Dec. 506]; but this is not so much the question here as is the inquiry as to who may be entitled to create a charge against the estate of a decedent by incurring or directing an expenditure for the transfer of the latter's remains or ashes, long after his decease, from one place of sepulture to another. It is our view that there were two courses open to the appellant Hamilton A. Bauer in the premises as presented by him upon the hearing upon the application to the probate court. One of these was to secure the prior order or subsequent acquiescence of the executrix and executor of the estate in the removal of the ashes of the deceased to another place of deposit as directed by him; or, as the other alternative, to pay the expense of such removal himself.

The order is affirmed.

Myers, C. J., Lawlor, J., Waste, J., Seawell, J., Knight, J., *pro tem.,* and Lennon J., concurred.

Rehearing denied.

---

[S. F. No. 10950. In Bank.—August 27, 1925.]

EMILY G. MARSHALL, Appellant, v. JOHN C. MARSHALL, Respondent.

[1] DIVORCE—ALIMONY—APPLICATION TO SUPPORT OF MINOR CHILDREN —APPEAL.—In an action for divorce, upon an appeal from an order purporting to modify both the interlocutory decree and the final decree by striking therefrom a provision for the payment of monthly alimony by the husband to the wife for the support of

the latter's two minor children, who had been adopted by the husband, the provision for the application of the alimony to the support of the children may be either regarded as surplusage or as error, and if the latter, it became final by failure to appeal therefrom; and such order, being based upon the ground that the provision for alimony as originally included in the decrees was void as in excess of the jurisdiction of the court, was erroneous.

[2] ID.—DIVISION OF COMMUNITY PROPERTY—AWARD OF ALIMONY—POWER OF COURT.—In an action for divorce upon the ground of extreme cruelty, the trial court has jurisdiction and power to divide the community property between the spouses or to award all of it to the wife, or to award her alimony in lieu of a division of the property, or in addition thereto, regardless of the question of the existence of children of the marriage of said parties.

[3] ADOPTION—RIGHT OF PARENT—SEVERANCE OF PARENTAL CONTROL. The natural mother of a child can legally adopt such child only in a case wherein her parental relationship has theretofore been severed as a matter of law.

[4] ID.—VOID PROCEEDINGS.—Where the husband of the mother of minor children in adoption proceedings petitioned that he be allowed "the joint custody and control of said minor children . . . with that of the right of their mother to have such custody and control," and prayed for an order that the minors be declared to be adopted by him jointly with his wife, to which the mother consented in writing, and the order of adoption provided that all other persons should be relieved of any parental duty toward and all responsibility for said children and have no right or control whatever over them "save of that of the mother," the mother retained her parental relationship, and proceedings thereafter whereby the mother purported to adopt the children were an utter nullity.

[5] ID.—JOINT ADOPTION.—Although no express authority therefor is to be found in the code, a husband and wife may jointly adopt a child pursuant to the procedure therein prescribed, the result of which is to make the child, in law, the child of both spouses.

(1) 19 C. J., p. 350, n. 76.   (2) 19 C. J., p. 333, n. 31.   (3) 1 C. J., p. 1370, n. 1, p. 1376, n. 64.   (4) 1 C. J., p. 1375, n. 48.   (5) 1 C. J., p. 1375, n. 48.

APPEAL from an order of the Superior Court of the City and County of San Francisco modifying an interlocutory and final decree of divorce. George H. Cabaniss, Judge. Reversed.

2.  See 1 Cal. Jur. 1016; 5 Cal. Jur. 358.
5.  See 1 Cal. Jur. 431; 1 R. C. L. 598.

The facts are stated in the opinion of the court.

Devoto, Richardson & Devoto and Anthony S. Devoto, for Appellant.

Charles L. James for Respondent.

MYERS, C. J.—This is an appeal by plaintiff from an order made long after judgment purporting to modify both the interlocutory decree and the final decree of divorce by striking out therefrom the provisions therein for the payment of monthly alimony by the defendant to the plaintiff for the support of the latter's two minor children. The plaintiff was a widow with two minor children by her first husband and married the defendant, who thereafter legally adopted these children by proceedings pursuant to the provisions of the Civil Code, section 221 et seq. Thereafter differences arose between the parties, and on December 15, 1920, they entered into an agreement reciting that they had resolved to live separate and apart and had "mutually agreed to divide the community property as follows." Then followed provisions for the equal division of the community property, and then the following provisions: "Said party of the second part [defendant] further hereby agrees to pay the sum of $100 a month for the support and education of Vincent A. Marshall and Monica T. Marshall, that is, $50 a month for each, until they reach the age of majority.

"Said party of the second part also agrees that he will surrender the adoption of said children, and it is understood that Mrs. Emily G. Marshall shall re-adopt said children."

Thereupon, on December 27, 1920, plaintiff filed a petition for the adoption of these two children, together with the written consent thereto of the defendant, and a decree was thereupon entered purporting to accomplish the adoption of her own children by the plaintiff. Four days thereafter an interlocutory decree of divorce was rendered in favor of the plaintiff by default, which awarded the custody of the two children to the plaintiff, but did not refer to them as minor children or as the children of the parties, and contained no finding or recital of fact that they were the children of the parties. It made the same provision for

the payment of alimony and substantially the same provisions for the division of the property as were contained in the contract between the parties. Thereafter and on January 13, 1921, plaintiff and defendant entered into another agreement reciting the entry of the interlocutory decree of divorce and providing: "Whereas said parties hereto have agreed to settle their property rights in accordance with this agreement as amendatory of said interlocutory decree, and it is hereby agreed between them as follows." Then follow provisions for a somewhat different division of the community property, but no mention of the subject of alimony. The defendant paid the alimony as provided in the first contract and in the decree for twenty-six months thereafter, a final decree having in the meantime been entered containing the same provisions respecting the payment of alimony and division of property as were contained in the interlocutory decree. On December 1, 1922, the defendant moved for an order modifying the interlocutory and final decrees by striking therefrom the provisions for the payment of alimony on the grounds "that said order was obtained by misrepresentations made to the court; that the court had no jurisdiction to make said order; and that said order is oppressive and unreasonable." After the hearing the court granted the motion and made the order upon the ground "that at the time of the issuance and entry of the interlocutory decree of divorce and at the time of the issuance of the final decree of divorce herein there were no children of the marriage of the parties hereto. . . . " This order was evidently predicated upon the conclusion that the adoption of the two children by their own mother changed their status so that they were no longer the children of the parties to the divorce action and that, therefore, the court in the divorce proceeding had no jurisdiction to award alimony for their support. This conclusion was rested upon the authority of *Younger* v. *Younger,* 106 Cal. 377 [39 Pac. 779], wherein by a final decree of divorce the custody of the minor child was awarded to the mother. Thereafter with her consent the child was regularly adopted by its grandfather, pursuant to the provisions of the Civil Code. Subsequent thereto the father applied to the court in the

divorce proceedings for a modification of the order award-
ing the custody of the child to the mother, and this court
held that the adoption proceedings had changed the status
of the child so that it was no longer the child of either of
the parties and the court in the divorce proceedings was
deprived thereby of jurisdiction to make any further order
affecting the status or custody of such child.

[1] The order appealed from herein, purporting to mod-
ify the interlocutory decree and final decree, was made long
after the expiration of six months. To the extent that such
order was made solely upon the ground that the provision
for alimony as originally included in the decrees was void
as in excess of the jurisdiction of the court, we think it was
erroneous. [2] The trial court in the divorce proceeding
(which was upon the ground of extreme cruelty) had juris-
diction and power to divide the community property between
the spouses or to award all of it to the wife, or to award
her alimony in lieu of a division of the property, or in ad-
dition thereto, regardless of the question of the existence
of children of the marriage of said parties. (Civ. Code,
secs. 139, 141, 142, 146, 147.) It seems, therefore, that the
provision for *the application of* the alimony thus awarded,
to wit, for the support of the two children, may be regarded
either as surplusage or as error. If the former, it could be
disregarded; if the latter, it became final by the failure to
appeal therefrom. Of course, under sections 138 and 139
of the Civil Code the court, having awarded alimony in a
divorce proceeding, retains jurisdiction to vacate or modify
the same in the exercise of a sound discretion. But it
appears with reasonable certainty from the record herein
that the modification here appealed from was not made in
the exercise of such discretion, but was made solely upon
the ground that the original provision was void.

[3] There is another question involved herein which has
not been touched upon in the briefs of counsel, namely, the
question of the validity and effect of the proceeding whereby
the mother purported to adopt her own children. Our Civil
Code provisions respecting adoption contain no definition
of the term, but all of the definitions seem to be in substan-
tial agreement to the effect that it is the act by which
relations of paternity and affiliation are created and recog-

nized as legally existing between persons *not so related by nature or by law.* In other words, it is a proceeding by which the adopting parent assumes a parental relationship toward the *child of another.* (See 1 Corpus Juris, 1370; 1 R. C. L. 592.) It seems unthinkable that one who is both the natural mother and the legal mother of a child can legally adopt such child. The natural mother of a child could legally adopt such child only in a case wherein her parental relationship had theretofore been severed as a matter of law, and this brings us to the question whether or not the adoption of plaintiff's two children by the defendant, her husband, had the effect of legally severing her parental relationship toward the children. We do not think that it had this effect, under the circumstances of this case, notwithstanding the provisions of Civil Code, section 229, that "the parents of an adopted child are, from the time of the adoption, relieved of all parental duties towards, and all responsibility for, the child so adopted, and have no right over it." If, after the adoption of plaintiff's two children by her husband and no further proceedings had, the plaintiff had died, would we hold that her two children were not legally her children and were not her heirs? It seems unlikely. It is plain from the record of the adoption proceedings herein that the parties thereto did not intend thereby to sever the parental relationship between the mother and the children. The husband's petition for adoption recited (italics added) that "Your petitioner herein is a fit and proper person to be allowed the *joint custody and control* of said minor children . . . *with that of the right of their mother* to have such custody and control. . . . Wherefore your petitioner prays that this honorable court make an order that the above named minors [be] adopted and that they be declared to be adopted by your petitioner, in that he shall *jointly together with his wife* Emily Gabriel Marshall be adjudged on such adoption as having the status of the natural father of said minors. . . . " The written consent to the adoption filed therein by the mother was to the effect "That the said John Charles Marshall adopt the said Vincent Anthony Marshall and Monica Thelma Marshall, minors, my children, as his own natural children and

that in conjunction and *jointly with me* act, maintain and have the legal status of a father and . . . shall *jointly with me* maintain the relationship of a parent to said minors herein mentioned.'' The order for adoption ended as follows: ''and that all other persons shall be henceforth relieved of any parental duty towards and all responsibility for the said children and have no right or control whatever over them *save that of the mother* of said minors, namely, Emily Gabriel Marshall, wife of petitioner herein.'' It seems plain, therefore, that after the completion of this adoption proceeding the mother of the children still retained her parental relationship toward them, legally as well as by blood. **[4]** If this be so, it would follow that the proceeding thereafter, whereby she purported to adopt these children, was an utter nullity. If it was not, it would follow as matter of logic, for example, that a wife could, with her husband's consent, legally adopt their minor child and thus sever, as a matter of law, the parental relationship between such child and its father.

**[5]** In *In re Williams,* 102 Cal. 70–79 [41 Am. St. Rep. 163, 36 Pac. 407], it was held that although no express authority therefor is to be found in the code, nevertheless a husband and wife may jointly adopt a child pursuant to the procedure therein prescribed, the result of which is to make the child, in law, the child of both spouses. Such was the obvious purpose and intent of both of the parties and of the court in the proceeding whereby the defendant herein purported to adopt the minor children of the plaintiff, his wife. We are not prepared to hold that section 229 of the Civil Code was intended to apply to a situation such as this, and to effect a result so plainly opposite to that which was intended.

We conclude, therefore, that the trial court had jurisdiction to include in its decrees the order for the monthly payments by the defendant which was included in both the interlocutory and final decrees and that the order vacating the same, which was made not in the exercise of discretion under section 138 or section 139 of the Civil Code, but as the setting aside of a void order, should be reversed and the cause remanded with direction to the trial court to con-

sider the pending motion upon the merits thereof and to determine the same in accordance with its sound discretion. It is so ordered.

Lawlor, J., Lennon, J., Seawell, J., Waste, J., Richards, J., and Knight, J., *pro tem.*, concurred.

Rehearing denied.

---

[L. A. No. 7413. In Bank.—August 31, 1925.]

## G. L. GORDON, Respondent, v. S. BECK, Appellant.

[1] VENDOR AND VENDEE—SALE OF REAL ESTATE—AGENCY—DUAL CAPACITY—VOID CONTRACT—NOTICE.—A vendee of real estate under an executory contract of purchase and sale may rescind the contract where the agent acted for both the vendor and vendee without the knowledge of the vendee, notwithstanding the lack of knowledge of the vendor of the dual capacity of the agent.

[2] ID.—LACK OF INJURY—GOOD FAITH.—Where an agent on the sale of real property acts for the vendor and vendee both, without knowledge on the part of the vendee of his dual capacity, the vendee may rescind the contract notwithstanding he has not been injured, or that the agent intended no wrong, or that the other party acted in good faith, the double agency being a fraud upon the vendee and he is not bound.

[3] ID.—DUTY OF AGENT.—The vendee in such a case is entitled to receive, and has the right to expect, absolute fidelity and loyalty to his interest on the part of his agent and his engagement with the vendor for compensation in the transaction without the vendee's knowledge renders the contract voidable at the option of the latter, even though the vendor pays the commission in good faith.

[4] ID.—NOTICE.—In such a case, where the agent was acting for the vendor upon a commission basis, his interest was adverse to the vendee and the latter could not be charged with this uncommunicated knowledge of the actual conditions, and the vendor, having accepted the advantage obtained under the contract, which he seeks to retain, will not be permitted to disclaim responsibility for the representations and concealments of his agent.

---

[5] FINDINGS—FINDING OF TRUTH OF MATERIAL ALLEGATIONS—INSUF-FICIENCY OF.—A finding that the *material* allegations of a certain paragraph of an answer are not true is uncertain, as no one may know what allegations were deemed material and the finding is insufficient.

[6] ID.—APPEAL.—When the trial court has failed to make findings the supreme court is not authorized to do so; and where, under the pleadings and evidence, findings not made are necessary to the proper determination of the rights of the parties, a new trial will be ordered.

(1) 2 C. J., p. 838, n. 60.    (2) 2 C. J., p. 838, n. 60.    (3) 2 C. J., p. 838, n. 60.    (4) 2 C. J., p. 838, n. 60.    (5) 38 Cyc., p. 1964, n. 83. (6) 4 C. J., p. 1059, n. 99, p. 1123, n. 46.

APPEAL from a judgment of the Superior Court of Los Angeles County. Albert Lee Stephens, Judge. Reversed.

The facts are stated in the opinion of the court.

Hocker & Austin for Appellant.

Davis & Thorne for Respondent.

Young & Young, *Amici Curiae.*

SHENK, J.—After judgment of reversal herein counsel appearing *amici curiae* were granted leave to file a petition for a rehearing on the representation that the decision in this case would probably have an important bearing on other and important pending litigation in which they and counsel associated with appellant's counsel were interested. As respondent had filed no brief, and as the importance of the questions involved seemed to warrant it, the rehearing was granted in order that respective counsel might have the opportunity to present more fully both sides of the controversy.

After due reconsideration of the questions involved we are satisfied with and adopt the reasoning and conclusions expressed in the former opinion, and will append such further comment as the additional points and authorities have

5. See 24 Cal. Jur. 989.
6. See 2 Cal. Jur. 1032.

elicited. As the contentions of *amici curiae* are all in behalf of the respondent's position, they will be referred to and deemed the respondent's contentions. The former opinion is as follows:

"This is an appeal by defendant S. Beck from a judgment foreclosing his interest in an executory contract for the purchase and sale of real property. The record is presented pursuant to section 953a of the Code of Civil Procedure.

"The action was commenced on January 21, 1921, by the filing of a complaint wherein it was alleged that on the 14th day of October, 1920, the plaintiff and defendant entered into a contract for the purchase and sale of an improved lot in the city of Los Angeles for the sum of $1,800, of which $400 was to be paid on the execution of the contract and the balance in monthly installments of $20 and that no part of the contract price had been paid except the initial payment of $400. The plaintiff prayed that an interlocutory judgment be entered adjudging the defendant to be indebted to the plaintiff for the unpaid balance of the contract price, and that if the same be not paid within such time as the court might fix, the plaintiff's title to the property be quieted and the interest of the defendant therein be terminated. To this complaint the defendant filed an answer admitting that he had signed the contract, but setting forth as an affirmative defense that the contract was invalid and not binding on him for the reason that without his knowledge or consent his agent in the transaction, one Claude Minor, had also acted for and as the agent of the plaintiff in the same transaction, and had received compensation therefor. The defendant also filed a cross-complaint alleging the dual agency of said Minor; that he had first discovered the duplicity of his agent about the first week in November, 1920, and immediately informed the plaintiff that he would not take possession of the property and would not carry out the terms of the contract; that he at no time had possession or control of said property and that by reason of the dual agency of the said Minor without the knowledge or consent of the defendant the contract was void and of no effect; that he had demanded the return of said $400 from the plaintiff, but that the same had not been paid. In the cross-complaint the defendant tendered the contract into

court for cancellation. The plaintiff interposed a general and special demurrer to the answer and also to the cross-complaint. The demurrer to the answer was sustained with leave to amend and the demurrer to the cross-complaint was sustained without leave to amend. Before the defendant filed an amended answer the plaintiff filed an amended complaint wherein the facts from the plaintiff's standpoint were more elaborately alleged and certain defects appearing on the face of the original complaint were cured. To this amended complaint the defendant filed an answer wherein he again set forth in an affirmative defense, among other things, the alleged dual capacity of the agent, Minor, without the knowledge or consent of the defendant; that the plaintiff knew at the time he employed said Minor as his agent that Minor was acting as the agent of the defendant; that he had first discovered the duplicity of his agent about the first week in November and immediately notified the plaintiff that he would not take possession of the property and would not carry out the terms of the contract. On the issues thus joined the court found in favor of the plaintiff and entered an interlocutory judgment declaring the defendant to be indebted to the plaintiff in the sum of $1,400 and that if the same be not paid within ninety days from such entry the plaintiff be awarded judgment terminating the interest of the defendant in and to said contract and property. The defendant failed to make such payment and the final judgment was entered.

[1] "The appellant contends that the trial court erred in sustaining the demurrer to the cross-complaint and that the findings are defective and insufficient to support the judgment and are not supported by the evidence.

"The demurrer to the cross-complaint was sustained apparently for the reason that it did not affirmatively appear therefrom that at the time the contract was signed the plaintiff had knowledge or notice that Minor was also the agent of the defendant in the transaction and on the theory that such knowledge or notice must be shown in order to subject the plaintiff to rescission. We do not so understand the rule. It is well settled in this state that a principal who has no notice or knowledge of the duplicity of his agent may at his option be relieved from the obligations of the contract as

against his opposing principal, who had notice or knowledge of such dual agency, either by affirmative action in rescinding the contract or by interposing such dual agency as a defense in an action to enforce the contract (*Wilson* v. *Southern Pacific Land Co.*, 61 Cal. App. 545 [215 Pac. 396]; *Newell-Murdoch Realty Co.* v. *Wickham*, 183 Cal. 39 [190 Pac. 359]). In each of those cases the effect of want of knowledge of the dual agency on the part of the defendant principal was referred to but was not determined for the very obvious reason that in each case the defendant principal had knowledge of the dual capacity of the agent. There is nothing in those cases, nor in any case in this state to which our attention has been directed, which would prevent the approval of the rule in its broader application as announced and declared by text-writers and the courts of other jurisdictions. Professor Mechem, in his work on Agency, 2d ed., vol. 2, p. 1978, says that if neither principal has knowledge of the dual capacity of the agent, the action of the agent is a fraud on both and a contract made under such circumstances is voidable at the option of either principal. Again, it is said on page 1717 of the same volume: ' . . . that not even an innocent third party, who is also the principal of the same agent, may be allowed voluntarily to retain benefits or advantages which come to him only through the act of his agent and as the result of that agent's perfidy to his other principal.' Also on page 1715 we find the following: 'An agent who is relied upon to exercise, in behalf of his principal, his skill, judgment, knowledge or influence, will not be permitted without such principal's full knowledge and consent, to undertake to represent the other party also in the same transaction. Such conduct is a fraud upon his principal, and not only will the agent not be entitled to compensation for services so rendered, but the contract or dealings made or had by the agent, while so acting also for the other party without the knowledge or consent of the principal, are not binding upon the latter, and if they still remain executory, he may repudiate them on that ground, or, if they have been executed in whole or in part, he may by acting promptly and before the rights of innocent parties have intervened, restore the consideration received, rescind the contract and recover back the property or rights with

which he has parted under it.  [2]  It makes no difference
that the principal was not in fact injured, or that the agent
intended no wrong, or that *the other party acted in good
faith;* the double agency is a fraud upon the principal and
he is not bound.'  (Italics added.)   The rule is supported
by cases cited by the author, and cases cited by appellant
also approve the rule that such a contract is voidable at
the option of either principal.   (*Becker* v. *Spalinger,* 174
Wis. 443 [183 N. W. 173]; *Ferguson* v. *Gooch,* 94 Va. 1 [40
L. R. A. 234, 26 S. E. 397]; *Guthrie* v. *Huntington Chair
Co.,* 71 W. Va. 383 [76 S. E. 795]; *Evans* v. *Brown,* 33 Okl.
323 [125 Pac. 469]; *City of Findlay* v. *Pertz,* 66 Fed. 427
[29 L. R. A. 188, 13 C. C. A. 559]; *Black* v. *Miller,* 71 Ill.
App. 342; *People's Ins. Co.* v. *Paddon,* 8 Ill. App. 447; *Fish*
v. *Leser,* 69 Ill. 394; *McElroy* v. *Maxwell,* 101 Mo. 294 [14
S. W. 1]; *Greenwood* v. *Spring,* 54 Barb. (N. Y.) 375;
*Marsh* v. *Buchan,* 46 N. J. Eq. 595 [22 Atl. 128]; *Henninger* v. *Heald,* 52 N. J. Eq. 431 [29 Atl. 190]; *Arthur* v.
*Georgia Cotton Co.,* 22 Ga. App. 431 [96 S. E. 232]; *Vinson et al.* v. *Pugh,* 173 N. C. 189 [91 S. E. 838]; *Truslow* v.
*Bridge & Terminal Co.,* 61 W. Va. 628 [57 S. E. 51].)
    [3]  ''The defendant was entitled to receive, and had the
right to expect, absolute fidelity and loyalty to his interest
on the part of his agent, Minor, and under the authorities
his engagement with the plaintiff for compensation in the
transaction without defendant's knowledge rendered the contract voidable at the option of defendant, even though the
plaintiff paid the commission in good faith.  [4]  As Minor
was acting for plaintiff upon a commission basis his interest
was adverse to defendant and the latter could not be charged
with this uncommunicated knowledge of the actual conditions.   On the other hand, having accepted the advantage
obtained under the contract, and seeking to retain such advantage, the plaintiff will not be permitted to disclaim responsibility for the representations and concealments of
Minor, his agent (*Herdan* v. *Hanson,* 182 Cal. 545 [189 Pac.
440]).   The law will not tolerate such a dual agency without
the knowledge and consent of both principals (*Glenn* v. *Rice,*
174 Cal. 269 [162 Pac. 1020]).   No question has been raised
upon this appeal as to the sufficiency of the cross-complaint
in respect to the allegations thereof showing compliance with