37 645
99 137

MASSING VS. AMES, Treasurer of Dane County, and another.

MUNICIPAL CORPORATIONS: ASSESSMENTS. (1) *Ch.* 213, *P. & L. Laws*, 1871, *held valid. Assessment of special tax invalid, not levied in accordance with charter.*

TAXATION: ASSESSMENT FOR. (2–4) *Unintentional assessment of land in name of person other than owner does not invalidate tax. Assessor not chargeable with bad faith, when.*

1. The charter of the city of Madison authorizes the common council to order sewers to be built at the expense of the lots benefited thereby, and fronting upon the street along which the sewer is constructed, but it requires that the council, before making such an order, cause an estimate to be made of the whole expense of the work, and of the amount to be charged against each lot, and that this estimate be filed in a certain office for the inspection of parties interested. It also contains other provisions as to the manner of letting the work, etc. Ch. 213, P. & L. Laws of 1871, authorizes the common council of said city to order the construction of a sewer, from a point in the marsh in the second and third wards to Lake Monona, and to charge the expense upon the lots situate upon said marsh. *Held,*

    (1) That said ch. 213 of 1871 is a valid act.

    (2) That in constructing said sewer the council was bound by the provisions of the charter relating to sewers, except as to the property which might be charged with the expense.

    (3) That, the council having wholly omitted to cause an estimate of the expense of said sewer to be made and filed as provided in the charter, it had no authority to construct the sewer at the expense of lot owners.

2. The mere fact that land owned by a married woman, whose deeds were on record, was assessed to her husband (there being no evidence that the assessor did not act according to his best information), is not sufficient ground for holding invalid a tax on the land based upon such assessment. *Hamilton v. Fond du Lac*, 25 Wis., 490, distinguished.

3. Where a lot belonging to a married woman is a part of the homestead

of the family, the occupancy being that of the husband as much as of the wife, the assessor is not chargeable, on account of such occupancy, with bad faith in not assessing the lot to the wife either as owner or occupant, but assessing it to the husband.

4. Where lots are occupied for pasture or garden, with no dwelling house thereon, the assessor is not chargeable with bad faith in assuming that the possession and occupancy are the owner's, and not assessing them to the real occupant, or ascertaining from him the true owner.

APPEAL from the Circuit Court for *Dane* County.

Action brought by the plaintiff, *Christine Massing*, against the county treasurer of Dane county and the *City of Madison*, to restrain said treasurer from selling about 300 lots of the plaintiff for the general tax assessed upon them for the year 1871, and for five special taxes assessed on a portion of them; and to restrain defendants from enforcing the collection of the taxes; to set aside the assessment and levy thereof, as illegal and void, and for other relief. The facts, as alleged in the pleadings, and as found by the court below, are substantially as follows: In 1871, the plaintiff was the owner of about 300 lots in the second and third wards of the city of Madison, and the title thereof was in her of record. O ne of them she occupied with her husband, Francis Massing, and their family, as a homestead; one was occupied by one Conlin as a pasture; seventeen were occupied by Glenz as a tobacco field; four by one Longfield, as a garden, and one by one Marks. None of them, except the homestead, had dwellings thereon. The remainder were vacant and unoccupied, and the greater portion of them were marsh lots. In assessment for taxation that year, none of the lots of the plaintiff were assessed in her name, nor were those occupied by the persons above named assessed to them, but all were assessed to Francis Massing, the husband of the plaintiff. There was no evidence that the assessor knew that the lots were owned by the plaintiff, and it appeared that the husband managed and controlled the plaintiff's business in respect to the lots. In the general assessment the marsh lots

were assessed at different values, according to their location, size, etc.

On the 14th day of March, 1871, chapter .213, private and local laws of that year, was passed and approved. As a bill it was entitled, " a bill to authorize the city of Madison to make a certain improvement, in the manner therein named." The substance of the act is stated in the opinion. After the passage of the bill, an ordinance was passed by the common council of the city, upon the report and recommendation of a special committee, ordering that the sewer be built; that the work of constructing the same be done under the direction of the street superintendent, according to plans and specifications furnished by the city surveyor therefor, as provided by the charter, and that the costs and expenses of the work should be taxed upon the several lots and parcels of land benefited by the improvement, as provided by law, and that such tax should be placed on the tax roll of 1871. The expense of building the sewer was $2,422.20. The city surveyor, after the completion of the sewer, made a plat of the marsh lands in said second and third wards, supposed by him to be benefited by said sewer, and assessed said sum of $2,422.20 upon the lots and part of lots on his plat, not according to the assessed valuation, but according to their size; adding thereby a tax of $2.60 to the tax of lots four rods wide by eight rods long, and a tax of $3.25 to the tax of lots four rods wide by ten rods long, and so in proportion to the parcels of lots. It is alleged in the plaintiff's complaint that many lots, which were omitted from the surveyor's plat and not taxed, were in fact marsh lots and benefited by the sewer; and that many of the plaintiff's lots were not benefited thereby, and were not marsh lots. But the court below found, as fact, that the plaintiff's lots on which the sewer tax was charged were properly assessable therefor. Upon the question of the sewer tax the court below found that the survey of the marsh lots was correct; that the tax was levied in accordance with the ordinance and the law; that the

subject of the act of 1871 is expressed in its title, and that the act is constitutional, and the sewer tax valid. Upon the question of the assessment of the lots in the name of the wrong person, the court below found that the assessor acted to the best of his information, and that the assessment was valid. Another ground of objection to the general tax, charged in the complaint, is that the mayor had borrowed money in the name of the city, without authority of law, and in a manner unauthorized by law, and that the common council had authorized the payment of interest on such loans ; and that the common council had misappropriated the funds of the city, unlawfully raised the salaries of city officers, etc.    Upon these allegations the court found that the mayor, by order of the common council, had borrowed $30,000 for the city, and that there was paid thereon $1,036, as interest; and that in 1871, about $15,000 had been paid by the city for street improvements, for which the preliminary estimates, required by the charter to be made, had not been made.

As to the other special assessments the court found, for reasons unnecessary here to be stated, that, upon payment of the general tax and the sewer tax, the plaintiff was entitled to the relief prayed ; and that, if those conditions were not complied with, the complaint should be dismissed ; the plaintiff in any case to pay the costs.    From so much of the judgment as denied the relief prayed as to the general tax and sewer tax, and awarded costs against the plaintiff, she appealed.

*Francis Massing*, for appellant.    [No brief on file.]

*Chas. K. Tenney*, city attorney of the city of Madison, with *H. M. Lewis*, of counsel, for respondents, to the point that the title of the act of 1871, authorizing the construction of the sewer, sufficiently expressed the subject of the act, cited *Nazro v. Ins. Co.*, 14 Wis., 295 ; *Durkee v. City of Janesville*, 26 id., 697 ; *Dean v. Charlton*, 27 id., 522 ; *Phillips v. Town of Albany*, 28 id., 340 ; *Mills v. Charlton*, 29 id., 400 ; *Evans v. Sharp*, id., 564 ; *Insurance Co. v. Mayor*, 8 N. Y., 241 ; *Brewster v. Syra-*

*cuse*, 19 id., 116. They argued that the act left it discretionary with the common council in what manner to build the sewer, where to build it, and to charge the whole expense upon the marsh lots, if they deemed it best; that courts would not control them in the exercise of this discretion ; that the jurisdiction belonged to them to adopt and determine the mode of assessment. Dillon on Mun. Corp., §§ 58–60 ; Angell & Ames on Corp., §§ 713, 714; *Howe v. Kane*, 2 Chand., 241 ; *State ex rel. v. Watertown*, 9 Wis., 254; *State ex rel. v. Hastings*, 10 id., 518 ; *Terry v. Milwaukee*, 15 id., 490 ; *Baker v. Boston*, 12 Pick., 184; *In re Fay*, 15 id., 243 ; *Spaulding v. Lowell*, 23 id., 71 ; *Benjamin v. Wheeler*, 8 Gray, 409, 413 ; *Wiggon v. Mayor*, 9 Paige, 16 ; *R. R. Co. v. Evansville*, 15 Ind., 395. The manner of assessment was in accordance with the theory of taxation by special assessments. In such cases, where the improvement is a benefit to the property, the customary and approved method is to assess by area and not by valuation, as in the case of streets by street frontage, etc. Dillon on Mun. Corp., § 596, and cases cited ; *Weeks v. Milwaukee*, 10 Wis., 242 ; *People v. Mayor of Brooklyn*, 4 N. Y., 419 ; *Brewster v. Syracuse*, 19 id., 116 ; *Clapp v. Hartford*, 35 Conn., 66 ; *State v. Hudson*, 5 Dutch. (N. J.), 104 ; *State v. Burgen*, id., 266 ; *Litchfield v. Vernon*, 41 id., 123 ; *Howell v. City of Buffalo*, 37 id., 267 ; *Commonwealth v. Woods*, 44 Pa. St., 113 ; *Schenly v. Alleghery*, 25 id., 128 ; *Petition of New Orleans*, 20 La. An., 497 ; *Petition of Draining Co.*, 11 id., 338 ; *Wallace v. Shelton*, 14 id., 498 ; *Warren v. Henly*, 31 Iowa, 31. To the point, that, if the assessor acts to the best of his information in assessing lands for taxation, his mistake in the ownership of the property will not invalidate the tax, they cited *Mills v. Gleason*, 11 Wis., 470; *Mills v. Johnson*, 17 id., 598 ; *Dean v. Gleason*, 16 id., 1 ; *Mitchell v. Milwaukee*, 18 id., 92 ; *Stokes v. Knarr*, 11 id., 380 ; *Ableman v. Roth*, 12 id., 81 ; *Finney v. Boyd*, 26 id., 366.

COLE, J. The only questions involved in this case are those

relating to the validity of the sewer tax and the general tax for the year 1871. As a condition to granting the relief asked in respect to the other taxes or special assessments, the court below required the plaintiff to pay these taxes. It is insisted by the counsel for the plaintiff that the sewer and general tax were likewise void, and that their collection should have been restrained by injunction. So far as the sewer tax is concerned, we think this position is correct and must be sustained.

That special tax was imposed to defray the expense of a sewer, authorized to be constructed by ch. 213, P. & L. Laws of 1871. The act in question authorized the common council of the city of Madison to order the construction of a sewer, commencing at a point near the gas works and extending into Lake Monona, and to charge the expenses of the improvement in whole or in part upon the lots or parcels of land lying and situated upon the marsh located in the second and third wards of said city. This is substantially the language of the act, and really all there is of it relating to the construction of the sewer.

Some objections are taken to the constitutionality of this law. It is said that it is private and local in its nature, embracing more than one subject, which is not expressed in its title. For the purpose of disposing of this branch of the case, it is unnecessary to dwell upon these objections, and we shall not do so further than to remark that we deem them untenable. In our opinion, the invalidity of the sewer tax does not turn upon the unconstitutionality of the act of 1871, but rests upon another ground. For, while the act empowered the common council to construct the sewer and to charge the expense in whole or in part upon the lots on the marsh adjacent to the sewer, yet, in order to authorize making such charge upon the lots, the work should have been done in compliance with the city charter regulating that kind of improvements. Under the provisions of the city charter, the common council could order sewers to be built at the expense of the lots benefited thereby, and fronting upon the street along which the sewer was con-

structed. But before such work was ordered to be done, the charter required the common council to cause an estimate of the whole expenses of the work to be made, and of the amount to be charged or assessed upon each lot; and this estimate was to be filed in the office of the city clerk, for the inspection of the parties interested. Secs. 10, 11, ch. 6 of the charter (P. & L. Laws of 1868, ch. 500). There are other provisions regulating the manner of letting the work to the lowest bidder; and, in a certain contingency, authority is given for doing the work under the supervision of the street superintendent. All these steps must be taken in the order in which they are prescribed; and this court has frequently held that the taking of each constitutes a condition precedent to doing the work. *Myrick v. The City of La Crosse,* 17 Wis., 443; *Kneeland v. The City of Milwaukee,* 18 id., 411; *Kneeland v. Furlong,* 20 id., 437. It follows from these decisions, that the making and filing of the estimates was essential to give the common council jurisdiction in the matter, and that they had no right to proceed to construct the sewer at the expense of the lot owners without complying with the charter in that regard. There is no pretense that these estimates were made and filed before the sewer was ordered to be constructed under the direction of the street superintendent and city surveyor. This omission was fatal to the jurisdiction of the common council.

It is, however, claimed that the common council, in the construction of this sewer and in levying and assessing the tax, were controlled by the act of 1871, and that the general provisions of the charter in relation to that class of improvements did not apply. But this, we think, is a mistake. The only additional power given the common council by this act, beyond that conferred by the charter, for constructing sewers, was the right to charge the expenses of the improvement upon all the lots situated on the adjacent marsh. In other words, the act changed the principle upon which the special tax was to be levied. The expense of the sewer might be charged in whole

or in part upon the lots on the adjacent marsh without regard to the fact whether the lot fronted upon the sewer or not. This is really all the change this law makes, or attempts to make, in the method of constructing and paying for the sewer, manifestly leaving the work to be done in accordance with the provisions of the charter which regulated and controlled the performance of such improvements. This, it seems to us, is too obvious to require argument or illustration in its support. For the assumption that the legislature intended to take the construction of this sewer out of the general provisions of the city charter, with the single exception of prescribing a different principle upon which the tax for its payment was to be levied, is quite unwarranted. The city charter did control so far as it was applicable to the improvement, and the work should have been done in conformity with its provisions.

The validity of the general tax is also questioned. It is objected that this tax is invalid, first, because the lots were not assessed to the plaintiff, who is the owner of them, and whose deeds were on record. They were assessed to her husband. The statute requires that real estate should be assessed in the name of the owner or occupant, except in case of unoccupied lands, where, if the owner is unknown, they may be assessed as such, without inserting the name of any person. Assessors should undoubtedly use all proper diligence, and avail themselves of all means of information convenient to ascertain the owner. In case the property is in the actual possession of any one, that is, where persons are residing on it, it is, of course, easy to ascertain the name of the occupant, to whom the land may be assessed. But in some cases it is not practicable for assessors to ascertain the true owner with the exercise of diligence and the means of information at their command. They have to do the best they can to comply with the law. But it would be laying down too strict a rule on the subject to say the assessor was chargeable with notice of the record title, and if he happened to make an honest mistake in regard to the real

owner, the assessment was void. Where the assessor knows, or has reliable information as to the real owner, he is inexcusable in assessing the property to the wrong party. And this court has held in a number of cases which have come before it, that an assessment, under one aggregate valuation, of lots owned by different persons, was void and would not sustain a tax. *State ex rel Roe v. Williston*, 20 Wis., 228; *Crane v. Janesville*, id., 305; *Hamilton v. The City of Fond du ·Lac*, 25 id., 490, 496. But it is obvious that the principle of these decisions does not apply, there being no pretense that the assessor knew in this case that the property belonged to the plaintiff instead of her husband, to whom, in fact, it was assessed. In *Hamilton v. Fond du Lac*, 25 Wis., 490, it was charged in the complaint that the assessor knew when he made the assessment that the plaintiff's wife was the owner in fee of certain lots, and this allegation was of course admitted to be true by the demurrer. And the decision goes in that case upon the ground that the assessor knew the owner, but stupidly or willfully assessed the lots to the husband. In such a case there is a most cogent reason for holding the assessment void, because not made in the name of the owner. Did it appear that Mr. Massing informed the assessor, when the assessment was made, that the lots belonged to his wife, and not to him, or had it been shown that the assessor knew from other sources of information that the plaintiff owned them, a different rule would apply. But no such fact is established in the case, and we are therefore unwilling to hold the assessment void because of the mistake of the officer in naming the husband as the owner instead of the wife on the assessment roll. When the wife has a separate estate which is not known to the assessor, a mistake in assessing the property to the husband, instead of to the wife, is more likely to be made than in other cases. And, as there is nothing in the present case to impeach the good faith of the assessor, or which tends to show that he did not act according

to his best information upon the subject, we are disposed to disregard the error.

But it is said that some of the lots were actually occupied, and that the assessor might readily have ascertained from those in possession who owned them, or should have assessed them to the occupants thereof. In respect to the homestead on lot 13, block 114, it is obvious that the husband was as much the occupant of that lot as the plaintiff. In regard to the other lots, on account of the use to which they were applied, it might have been difficult for the assessor to find out who in fact was the occupant. Some of these lots were used by Conlin for a pasture; some were occupied by Glenz for a tobacco field; and some by Longfield for a garden. It does not appear that there was any dwelling house upon any of them, or any other building occupied by tenants. When there are persons residing upon property, the assessor can, by diligence and inquiry, learn who they are. Not so when the lots are used and occupied for a pasture or garden which occupancy and possession the officer may naturally assume are the owner's. Certainly there is nothing in such possession and occupancy which would tend to prove bad faith on the part of the officer, if he happened to assess the property in the name of the wrong person.

The other objections taken to the general tax, that the common council misappropriated funds, or illegally borrowed money, or were guilty of extravagance in the management of the affairs of the city, cannot prevail. If any or all of these objections were held sufficient grounds for setting aside a general tax, it would be quite difficult to sustain the government. Unfortunately, improvidence in the management of the public finances is not chargeable alone to the authorities of municipal corporations. It is a common and general evil, but the remedy will be found elsewhere.

It follows, from these views, that the judgment of the circuit court must be reversed, and the cause must be remanded with

*By the Court.* — It is so ordered.