PORTER *v.* BARRETT.

1. VENDOR AND PURCHASER—FORFEITURE — PARTIES ENTITLED TO
   NOTICE.
   The assignees of the vendees' interest in a land contract,
   where the assignment was with the consent of the vendors,
   were proper parties in proceedings by the vendors for
   forfeiture of the contract for breach thereof by the as-
   signees in selling by separate contract to a negro, but the
   latter, not being a party to the contract sought to be for-
   feited, was not entitled to notice of said proceedings.[1]

2. APPEAL AND ERROR—CORRECT JUDGMENT SHOULD BE AFFIRMED
   ALTHOUGH TRIAL JUDGE GAVE WRONG REASON THEREFOR.
   If the judgment entered on a directed verdict is sustain-
   able for any of the reasons urged in the trial court, it
   should be affirmed, notwithstanding the trial judge gave
   a wrong reason for directing the verdict.[2]

3. CONSTITUTIONAL LAW—FEDERAL CONSTITUTION—PROVISIONS AS
   TO EQUAL RIGHTS REFER TO STATE ACTION AND NOT PRIVATE
   CONTRACT.
   The provisions of section 1 of the 14th Amendment to the
   Federal Constitution, so far as they are applicable to
   persons of African blood, are aimed at, and protective
   against, State action and not private contracts, and, there-
   fore, no rights secured to colored people by the Federal
   Constitution are invaded by a restriction in a land con-
   tract against selling the land to a negro.[3]

4. VENDOR AND PURCHASER—RESTRICTION OF SALE TO NEGRO VOID
   AS UNREASONABLE RESTRAINT UPON POWER OF ALIENATION—RE-
   STRAINT AS TO OCCUPANCY VALID.
   Although a restriction against the occupancy of land by
   colored people is valid, a restriction in a land contract
   against the sale of the land to them is void as an un-
   reasonable restraint upon the power of alienation.[4]

Error to Muskegon; Vanderwerp (John), J.

[1]Vendor and Purchaser, 39 Cyc. p. 1396; [2]Appeal and Error,
4 C. J. § 2557; [3]Civil Rights, 11 C. J. § 3; Constitutional Law,
12 C. J. § 878; [4]Perpetuities, 30 Cyc. p. 1519; Vendor and Pur-
chaser, 39 Cyc. p. 1348 (Anno).
On validity of segregation statute or ordinance prohibiting
persons of different race or color from living in same locality,
see notes in 47 L. R. A. (N. S.) 1087; L. R. A. 1915D, 684; L.
R. A. 1918C, 220.

Submitted October 13, 1925.    (Docket No. 49.)    Decided December 22, 1925.

Summary proceedings by Glenn M. Porter and another against Wilbratt Barrett and others for possession of land.    There was judgment for defendants before the commissioner, and plaintiffs appealed to the circuit court.    Judgment for defendants on a directed verdict.    Plaintiffs bring error.    Affirmed.

*Bunker & Rogoski,* for appellants.

*James E. Sullivan,* for appellees.

Fellows, J.    Plaintiffs as vendors entered into a contract to sell Louis Parent two lots in Muskegon Heights.    By assignment defendant Wilbratt Barrett acquired the vendee's interest; we assume defendant Auxilie Barrett to be his wife.    A house was erected on the premises.    By separate contract the Barretts agreed to sell the premises to defendant Wilson Robinson who is a negro.    The original contract seems to have been lost and two copies, varying slightly, are in the record; Exhibit 1 contains this clause:

"This land is sold upon express condition that the business of manufacturing or selling intoxicating liquor shall never be conducted thereon, or on any part thereof; that no slaughter house or nuisance of any kind or any other thing obnoxious to a good residence neighborhood, shall ever be allowed on said land, and the same shall never be sold or rented to a colored person."

In Exhibit 4, the words "other than those of the Caucasian race" take the place of "a colored person." There are provisions for forfeiture for breach of conditions in the contract.    Plaintiffs finding defendant Robinson in possession and learning of the contract of sale to him gave notice of forfeiture to defendants

Barrett and later instituted this proceeding before a circuit court commissioner to recover possession. On the trial in the circuit court a verdict was directed for defendants upon the grounds that the Barretts were not proper parties and that defendant Robinson had not been served with notice of the forfeiture.

We are unable to agree with the reasons given by the learned trial judge in directing a verdict. The proceedings involved the forfeiture of a land contract to which plaintiffs as vendors, and defendants Barrett as vendees (by assignment with plaintiffs' consent) were parties. Before the rights of defendants Barrett in this contract could be forfeited finally they were entitled to their day in court; they were proper parties. Plaintiffs had no contract relations with defendant Robinson; he was a stranger to them and their contract. Under such circumstances he was not entitled to notice of the forfeiture of a contract to which he was not a party. *Tuller* v. *Railroad Co.,* 194 Mich. 312. If, however, the correct result was reached, and the judgment is sustainable for any of the reasons urged in the trial court, it should be affirmed. As grounds for sustaining the action of the trial judge, some questions of minor importance are first urged by defendants' counsel, but they are unimportant and in the main not well taken and we shall dispose of the case on the main question in it, which is whether the restriction in the eighth clause of the contract inhibiting sale to a colored person is void. If it is invalid, then its breach does not work a forfeiture and the judgment should be affirmed. If valid, the case should be sent back for a new trial.

That the provisions of section 1 of the 14th Amendment to the Federal Constitution, so far as they are applicable to those of African blood, are aimed at, and protective against State action and not private contracts, has been settled by a long line of Federal

authorities, among them see *Slaughter-House Cases,* 16 Wall. (U. S.) 36; *Virginia* v. *Rives,* 100 U. S. 313; *Civil Rights Cases,* 109 U. S. 3 (3 Sup. Ct. 18) ; so that no rights secured to colored people by the Federal Constitution have been invaded by the restriction in the instant case. It may be interesting to note, however, that in at least four States municipalities acting under delegated authority from the State have by the adoption of so-called segregation ordinances attempted to prevent ownership by whites of property in blocks set apart for colored people, and by colored people in blocks set apart for whites. In three of the States the courts of last resort have. declared them to be invalid. *State* v. *Gurry,* 121 Md. 534 (88 Atl. 546, 47 L. R. A. [N. S.] 1087, Ann. Cas. 1915B, 957) ; *Carey* v. *City of Atlanta,* 143 Ga. 192 (84 S. E. 456, L. R. A. 1915D, 684, Ann. Cas. 1916E, 1151) ; *State* v. *Darnell,* 166 N. C. 300 (81 S. E. 338, 51 L. R. A. [N. S.] 332). In the other State the court sustained the validity of the ordinance. *Buchanan* v. *Warley,* 165 Ky. 559 (177 S. W. 472, Ann. Cas. 1917B, 149), but on review this holding was reversed. *Buchanan* v. *Warley,* 245 U. S. 60 (38 Sup. Ct. 16, L. R. A. 1918C, 210, Ann. Cas. 1918A, 1201).

Restraints on alienation are of feudal origin. But as early as the reign of Edward I there was a marked change in England brought about by the enactment of the statute *quia emptores* (18 Edward I, cap. 1, p. 235) which in part provided:

"That from henceforth it shall be lawful to every freeman to sell at his own pleasure his lands or tenements, or part thereof; so nevertheless that the feoffee shall hold the same lands or tenements of the same chief Lord of the Fee, and by the same services and customs as his feoffer held them before."

Littleton said (2 Coke upon Littleton, § 360) :

"Also, if a feoffment be made upon this condition,

that the feoffee shall not alien the land to any, this condition is void, because when a man is infeoffed of lands or tenements (*pur ceo que quant home est enfeoffe de terres ou tenements*), he hath power to alien them to any person by the law. For if such a condition should be good, then the condition should oust him of all the power which the law gives him, which should be against reason, and therefore such a condition is void."

The spirit of the statute *quia emptores,* to relieve the landowner from fetters placed on him and his lands by restraints upon alienation has been in the main accepted and enforced by the courts of England from an early day. Out of line, however, with this spirit is the case *Doe, dem. Gill,* v. *Pearson,* 6 East, 173, where a restraint upon alienation except to the devisee's sisters was sustained. This case has been referred to as a leading one by those courts which have sustained the right to partially restrain alienation, but the court in *Attwater* v. *Attwater,* 18 Beav. 330, where the restriction was quite similar expressly declined to follow it and held the restrictions void on the authority of Littleton above quoted.

In this country some of the courts have recognized the validity of restraints on alienation for a limited time or to particular persons. No doubt a statement of Littleton to which we shall later refer prompts such holding, and the statement of Justice Field in *Cowell* v. *Springs Co.,* 100 U. S. 55, is frequently cited to the same effect. He there said:

"Conditions which prohibit its alienation to particular persons or for a limited period, or its subjection to particular uses, are not subversive of the estate: they do not destroy or limit its alienable or inheritable character."

But an examination of the case then before the court shows that the question involved was a restriction of the use of the premises for the manufacture

and sale of intoxicating liquors, and that the statement of the learned Justice was but *dictum.*

Let us now examine the cases relied upon by plaintiffs' counsel. *Queensborough Land Co.* v. *Cazeaux,* 136 La. 724 (67 South. 641, L. R. A. 1916B, 1201, Ann. Cas. 1916D, 1248), sustains their contention, but it should be noted that there are some distinguishing features between the two cases. In that case the restriction was for 25 years, while here it is for all time; and in that case the vendors rescinded for breach of condition and tendered back the purchase price while here the plaintiffs seek to hold what has been paid and recover the lots with the improvements which have been put on them. Doubtless these distinguishing features would not justify a different conclusion of law and the case must be held to be with the plaintiffs as is *Koehler* v. *Rowland,* 275 Mo. 573 (205 S. W. 217, 9 A. L. R. 107), although like the Louisiana case the restriction was for 25 years. In the latter case reliance is placed on *Keltner* v. *Harris* (Mo. App.), 196 S. W. 1. But that case involved a question of fraudulent representations and not restrictions in a deed. *Los Angeles Investment Co.* v. *Gary,* 181 Cal. 680 (186 Pac. 596, 9 A. L. R. 115), also relied upon by plaintiffs, sustains a restriction against occupancy by a person other than of the Caucasian race but holds a restriction against a sale to such a person to be void and commends the opinion of the court of appeals in *Title Guarantee & Trust Co.* v. *Garrott,* 42 Cal. App. 152 (183 Pac. 470). The opinion in that case is worthy of commendation; it is an exhaustive review of the subject. It was there said:

"The rule of the common law against restraints on alienation is based on considerations of great public convenience and policy as much as upon the natural law that a man can not both give and not give. The only safe rule is to hold that a condition that restrains

the power of alienation to any extent whatever, either as to persons or time, is inconsistent with the estate granted, as, indeed, it necessarily must be if the estate be title in fee simple absolute, and if, as all must admit, the power of alienation is an inseparable incident to, and a necessary concommitant of, ownership."

In addition to the cases cited by plaintiffs' counsel it should be stated that *Corrigan* v. *Buckley,* 299 Fed. 899, also sustains their contention although the bill in that case only asked for the enforcement of the restriction for a period of 21 years.

Let us now consider some of the cases which entertain the opposite view. In *Anderson* v. *Cary,* 36 Ohio St. 506 (38 Am. Rep. 602), it was said by the court:

"By the policy of our laws, it is of the very essence of an estate in fee simple absolute, that the owner, who is not under any personal disability imposed by law, may alien it or subject it to the payment of his debts at any and all times; and any attempt to evade or eliminate this element from a fee simple estate, either by deed or by will, must be declared void and of no force."

In *Manierre* v. *Welling,* 32 R. I. 104 (78 Atl. 507, Ann. Cas. 1912C, 1311), will be found an exhaustive opinion with a careful review and examination of the authorities. In that case the will restrained alienation except to brothers and sisters. The restraint was held to be invalid, and it was said:

"As preliminary to the particular discussion of the language above quoted, it would be well to consider for a moment what meaning or force should be attached to the words 'power of alienation,' or 'right of alienation,' spoken of by all the authorities as incident to the ownership of an estate in fee simple. We regard the words 'power' or 'right,' so used, as of much greater significance than would seem to be attached to them by some of the cases above cited. We conceive the power or right of alienation to include the power or right to dispose of property held in fee, in

such manner as the owner sees fit, whether by direct gift, by settlement in trust or by will, or by sale at a price to be fixed by the owner at private sale, or by sale at public auction, or by lease, mortgage, or other mode of conveyance, so that the purpose of the owner thereof in its disposition may be carried out, whether it be a purpose of benevolence, or a purpose to obtain value therefor up to the full market or adequate value thereof; and as further incident to such power or right, that an estate in fee simple vested in the owner should be subject to the owner's debts and liabilities, so that the owner's creditors may be enabled to avail themselves thereof through bankruptcy or insolvency proceedings or by ordinary process of law or suit in equity."

In *Johnson* v. *Preston*, 226 Ill. 447 (80 N. E. 1001, 10 L. R. A. [N. S.] 564), it was said:

"The general rule is, that where a devise is made in fee, either of a legal or an equitable interest, all limitations tending to deprive the estate of any of the incidents appertaining to the interest created are held to be repugnant to the devise, and void. To transfer a fee and at the same time to restrict the free alienation of it, is to say that a party can give and not give, in the same breath."

In *Barnard's Lessee* v. *Bailey & Kettlewood*, 2 Har. (Del.) 56, the devise was held to be of a fee; the restraint was against willing the property to the kin of the testator or of the devisee. It was held that the restraint was void. We shall not attempt a resumé of *DePeyster* v. *Michael*, 6 N. Y. 467 (57 Am. Dec. 470). The opinion is by Chief Justice Ruggles, and considers the subject at length. See, also, *Williams* v. *Jones*, 2 Swan (Tenn.), 620; *O'Connor* v. *Thetford* (Tex. Civ. App.), 174 S. W. 680; *Latimer* v. *Waddell*, 119 N. C. 370 (26 S. E. 122, 3 L. R. A. [N. S.] 668); *Christmas* v. *Winston*, 152 N. C. 48 (67 S. E. 58, 27 L. R. A. [N. S.] 1084); *Gandolfo* v. *Hartman*, 49 Fed. 181.

We now come to the consideration of *Mandlebaum*

v. *McDonell,* 29 Mich. 78 (18 Am. Rep. 61).    It should be noted that the question there involved was whether a restraint on alienation for a reasonable time or for any time was valid and Mr. Justice CHRISTIANCY who wrote for the court carefully limited the opinion to the case before the court.    He reviewed the authorities at length and quoted the statement of Littleton to which we have before adverted and commented unfavorably upon it.    We quote from the opinion (p. 96) :

"But Littleton, in section 361, makes this qualification: 'But if the condition be such that the feoffee shall not alien to such a one, naming his name, or to any of his heirs, or of the issues of such a one, etc., or the like, which conditions do not take away all power of alienation from the feoffee, etc., then such condition is good.'

"Chancellor Kent, however, says (Com. Vol. 4, p. 131) :    'But this case falls within the general principle, and it may be very questionable whether such a condition would be good at this day' (citing the case of *Newkirk* v. *Newkirk,* 2 Caines, 345, where the condition that the devisee should continue to inhabit the town of Hurley was adjudged to be unreasonable). And certainly, in a country like ours, where lands are as much an article of sale and traffic as personal property, and the policy of the State has been to encourage both the acquisition and easy and free alienation of lands, such restrictions ought not to be encouraged by the courts."

After considering the authorities at length (p. 107), it was said by Mr. Justice CHRISTIANCY :

"We are entirely satisfied there has never been a time since the statute *quia emptores* when a restriction in a conveyance of a vested estate in fee simple, in possession or remainder, against selling for a particular period of time, was valid by the common law.    And we think it would be unwise and injurious to admit into the law the principle contended for by the defendants' counsel, that such restrictions should be held valid, if imposed only for a reasonable time.

It is safe to say that every estate depending upon such a question would, by the very fact of such a question existing, lose a large share of its market value. Who can say whether the time is reasonable, until the question has been settled in the court of last resort; and upon what standard of certainty can the court decide it? Or, depending as it must upon all the peculiar facts and circumstances of each particular case, is the question to be submitted to a jury? The only safe rule of decision is to hold, as I understand the common law for ages to have been, that a condition or restriction which would suspend all power of alienation for a single day, is inconsistent with the estate granted, unreasonable and void."

We shall not cite or quote from our other cases which have followed this case. The opinion of Justice CHRISTIANCY is so outstanding as to make it unnecessary. Of it Mr. Justice Parkhurst said in *Manierre* v. *Welling, supra:*

"In *Mandlebaum* v. *McDonell,* 29 Mich. 78, where the court found that there was neither a strict condition with reverter, nor a conditional limitation over, but only a restriction upon all alienation for a limited time, we find the most comprehensive and satisfactory review of the authorities to be found in any of the cases cited."

And Mr. Gray in Gray on Restrictions on Alienation (2d Ed.), p. 41, said of it:

"In *Mandlebaum* v. *McDonell,* 29 Mich. 78, the court thought there was neither a condition nor a conditional limitation, but only a restriction on alienation within a limited time; but the opinion of CHRISTIANCY, J., holding the restriction bad, is the fullest argument against the validity of such conditions and conditional limitations to be found in the books."

Indeed, this case and *DePeyster* v. *Michael, supra,* have without question been long recognized as the two leading cases in this country on the subject.

Now if a restraint on alienation for a single day is bad, how can it be said that a restraint on alienation

to a large class of citizens or a small one, or to even one is good? If it is not for the courts to determine what would be a reasonable time to restrain alienation, how can it be left to the courts to say whether a restraint on alienation to a class is reasonable or not? We must bear in mind that we are not dealing with a restraint on the use of the premises. Such restraints unless unreasonable have quite uniformly been upheld. Before the sale of intoxicating liquor was prohibited, this court and practically every court of last resort in the Union upheld restraints of the use of premises for its manufacture or sale. Such a restraint upon the *use* was uniformly upheld; but would a restraint on *sale* of premises to one who was engaged in the sale of intoxicating liquors elsewhere be valid? I think not. Restraints upon the erection of manufacturing plants in residential districts have uniformly been upheld, but would a restraint of sale to one engaged in the manufacturing business be valid? I think not. Restraint on the *occupancy* of premises in residential districts by colored people has been upheld by this court. *Parmalee* v. *Morris,* 218 Mich. 625. Does it follow that a restraint upon the right to *sell* property to a colored man is valid? I think not. I think the holding and the reasons for the holding in *Mandlebaum* v. *McDonell, supra,* precludes us from sustaining as valid the restrictions before us.

The judgment will be affirmed.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.