DOHERTY and others, Appellants, vs. RICE and wife, Respondents.

*February 13—May 5, 1942.*

390

*Everett P. Doyle* of Delavan, for the appellants.

For the respondents the cause was submitted on the brief of *Thorson & Seymour* of Elkhorn.

FOWLER, J.   In 1925 the owner of a tract of land bordering on a lake suitable for sale and occupation as summer-residential property platted the property and placed the plat upon record.   The plat contained no mention of restrictions as to alienation or use of the property but the deeds of the owner to all parcels conveyed contained a restriction against sale to or occupation by anyone not a member of the Caucasian race, to use for residential purposes only, against the construction of residences of less than $600 cost, and against the construction or use of outside toilets, and these restrictions were included in all mean conveyances from the platter. The premises in suit were owned by the plaintiffs at the time of a tax sale and the issuance of a tax deed.   The tax deed ran to the defendant Rice.   The plaintiffs were also the owners at the time of the commencement of the suit of other parcels of the platted land.   The defendant Rice is a Negro and has built on the premises a house alleged to be of less than $600 cost, is occupying the premises as the residence of himself and wife, and has in use thereon an outside toilet. The restriction in the deeds is in the form of a promissory

covenant and contains no reverter clause. The action was brought against Rice and his wife to recover possession of the premises and prays judgment *quia timet* and for "such other and further relief as may be equitable."

It is to be noted that while *quia timet* actions are in equity and under general equity practice can only be brought by claimants in possession, the plaintiffs although not in possession can bring such action under sec. 281.01, Stats., which extends the action to those out of possession. *Kimball v. Baker Land & Title Co.* 152 Wis. 441, 140 N. W. 47; *Farr v. Hobe-Peters Land Co.* (7th Cir.) 188 Fed. 10. The prayer of the complaint thus invokes the equitable jurisdiction of the court and empowers the court to grant any equitable relief to which the plaintiffs may be entitled.

We have recently considered the effect of restrictions as to the use of property conveyed so far as holders under conveyances from private parties are concerned. The most recent case is *Burden v. Doucette, ante,* p. 240, 2 N. W. (2d) 204. From the opinions in this case and in *Stein v. Endres Home Builders, Inc.,* 228 Wis. 620, 280 N. W. 316, the general principle is deducible that reasonable restrictive covenants as to the use of the land conveyed will be enforced in favor of landowners for whose benefit they were imposed. That restriction against use of the land for other than residential purposes will be enforced in favor of such owners is recognized by all the authorities and we need say no more as to the right of the plaintiffs to relief in that regard, premising, of course, that the restriction as to such use is a reasonable one and that the grantee takes from a private grantor holding under a chain of title from the original grantor who imposed the restriction. The plaintiffs besides contending that they are entitled to the relief demanded under the restrictive covenants in the deeds in their chain of title also claim that the tax deed is void, (1) because the land was assessed in the name of one not the owner; (2) because the land was insufficiently described in the assessment roll and in the deed.

We will dispose of these contentions before taking up their contention (3) that the tax deed is void because the grantee therein is a Negro.

(1) The parcel of land involved was entered on the assessment roll in the name of Wisconsin State Bank, whereas the legal title was in the Wisconsin State Bank, Trustee. The plaintiffs' claim here is that because sec. 70.17, Stats., provides that "real property shall be entered in the name of the owner, if known to the assessor, otherwise to the occupant thereof if ascertainable, and otherwise without any name" the assessment was void. The land is lake-resort property and was unoccupied at the time of the assessment. Doubtless the name of the owner was "ascertainable" by the assessor by reference to the records of the register of deeds' office. But even so, it is the land that is assessed, not the owner of the land. The effect of an entry where the owner's name is wrongly entered should be fully as potent as basis for a tax as an entry without naming the owner at all. But as said in *Massing v. Ames,* 37 Wis. 645, 652:

"It would be laying down too strict a rule on the subject to say the assessor was chargeable with notice of the record title, and that if he happened to make an honest mistake in regard to the real owner, the assessment was void."

The mistake involved in the *Massing Case, supra,* was entering a husband as the owner, whereas the owner was his wife. The assessment was upheld. The instant case seems sufficiently covered by *N. Boyington Co. v. Southwick,* 120 Wis. 184, 187, 97 N. W. 903. The instant assessor had as much reason to believe the bank "to be the owner against whom the lot was properly assessable," as the assessor in the *Boyington Co. Case* had to believe the same as to the Boyington Company. The bank as trustee under the entry here involved had the same knowledge of the assessment and subsequent proceedings that Atwell had in the *Boyington Co. Case* and that it would have had had it been named owner as trustee instead of as owner. The error could not mislead the bank

as trustee anymore than Atwell was misled. The appellants cite *Crane v. Janesville,* 20 Wis. *305, in support of their contention but the case is not in point. There two lots were together assessed in a lump sum. The person named as owner owned one of them but not the other. Manifestly the owner could not be required to pay a tax on two lots, one of which he did not own to protect the lot he did own from sale. This and like cases are distinguished in the *Massing Case, supra.*

(2) According to the recorded plat the instant parcel of land is "Block 5, Delavan Lake View Crest Subdivision." The plat covers land in the town of Delavan, Walworth county, and is recorded in the register of deeds' office of Walworth county. It is claimed that omission of the words "Delavan" and "Subdivision" renders the description so indefinite and uncertain as to void the tax deed. The land is described in the certificate of tax sale as "Block 5, Lake View Crest, Sec. 31, Town 2, Range 16," and in the tax deed as "Block 5, Lake View Crest, Town of Delavan, Walworth County, Wisconsin." There are two other platted tracts in the town of Delavan. One is named "Lake View" and the other "Lake View Subdivision." Both of these are indexed under "L" in the register of deeds' office. "Delavan Lake View Crest" is indexed under "D." It is urged that on examination of the records it would naturally be assumed that the property described in the certificate and deed was located in "Lake View" or "Lake View Subdivision," and that the tax deed is therefore void. This seems to us untenable. Whether the descriptions are sufficient depends on whether the descriptions "indicate the land intended with ordinary and reasonable certainty and which would be sufficient between grantor and grantee in an ordinary conveyance." Sec. 70.25, Stats. The insertion of the word "Crest" in the description would seem to indicate that neither block 5 in "Lake View" nor "Lake View Subdivision" was intended and that "Lake

View Crest Subdivision" was, and the inclusion of "Sec. 31, Town 2, Range 16" in the certificate and "Town of Delavan, Walworth County, Wisconsin" in the deed would sufficiently indicate the location of that subdivision. It is not necessary that the land be described in the same language on the assessment rolls and certificate or deed, if each description is in itself sufficient. *Mitchell v. Pillsbury,* 5 Wis. 407. Counsel on both sides cite several cases which they contend support their respective contentions as to the sufficiency or insufficiency of the instant description, none of which is precisely like the instant case in point of fact. As indicating the governing principle under the statute cited, *Corry v. Scudder,* 151 Wis. 104, 105, 138 N. W. 68, and *Mendota Club v. Anderson,* 101 Wis. 479, 487, 78 N. W. 185, are most nearly in point. We consider the description sufficient.

(3) The restrictions involved are of three classes, (a) that restricting sale to a non-Caucasian; (b) that restricting occupation by a non-Caucasian; and (c) that restricting use for residential purposes, forbidding construction of residences of less than $600 cost and forbidding construction or use of outside toilets.

(a) The plaintiffs contend that the restriction against sale to a non-Caucasian rendered the title of the grantees void. The defendants' counsel contends that the restriction as to sale is invalid because violative of the Wisconsin constitutional provision relating to conveyances in restraint of alienation and because violative of the Fourteenth amendment of the United States constitution. They concede that as to the Fourteenth amendment the weight of authority is against them. The concession is not only fully warranted, but is compelled. The only case supporting it is *Gandolfo v. Hartman* (C. C. S. D. Cal. 1892), 49 Fed. 181, 16 L. R. A. 277, a decision of the United States district court of California, which is contrary to *Corrigan v. Buckley,* 271 U. S. 323, 46 Sup. Ct. 521, 70 L. Ed. 969. The latter must be taken as

finally settling that question. Even the cases that hold the restriction void for other reasons hold that it is not violative of the United States constitution, as *Porter v. Barrett,* 233 Mich. 373, 206 N. W. 532, and *Los Angeles Inv. Co. v. Gary,* 181 Cal. 680, 186 Pac. 596, 9 A. L. R. 115. Among those cases directly holding restraints against sales to non-Caucasians not violative of the United States constitution are the following: *Queensboro Land Co. v. Cazeaux,* 136 La. 724, 67 So. 641, L. R. A. 1916 B, 1201, Ann. Cas. 1916 D, 1248; *Koehler v. Rowland,* 275 Mo. 573, 205 S. W. 217; *Corrigan v. Buckley, supra.*

The contention that the restriction against sales to a non-Caucasian is void as a restraint against alienation would be difficult of decision were it necessary for us to decide it. The cases below cited covering the point involve non-Caucasians holding under a chain of title from the grantor who imposed the restrictions. Of these cases, *Porter v. Barrett, supra; White v. White,* 108 W. Va. 128, 150 S. E. 531, and *Williams v. Commercial Land Co.* 34 Ohio L. R. 559, hold that the provision is void as a restraint against alienation under the common law. *Los Angeles Inv. Co. v. Gary, supra,* holds it void for that reason under a California statute. *Queensboro Land Co. v. Cazeaux, supra; Koehler v. Rowland, supra; Chandler v. Ziegler,* 88 Colo. 1, 291 Pac. 822; *Russell v. Wallace* (App. D. C.), 30 Fed. (2d) 981; and *Cornish v. Donoghue* (App. D. C.), 30 Fed. (2d) 983; *Corrigan v. Buckley, supra;* and *Torrey v. Wolfes* (App. D. C.), 6 Fed. (2d) 702, hold such provision not void as a restraint on alienation. There is a multitude of cases however not involving any racial question that hold restrictions against alienation for any period of time or to any class of persons void for such reason. The ground of these decisions in large part is that the restrictions are void because repugnant to the granting or devising clause of a deed or will purporting to convey or transfer a fee-simple title. The cases pro and

con upon this point are stated and discussed in *White v. White, supra*. We consider it not necessary to decide the validity of the defendants' title were they holding under a chain of title from the original grantor who imposed the restriction. They are holding under a tax deed. That deed is an independent source of title. Whatever may be the effect of the restriction against sale upon a grantee holding under a title stemming from the original grantor it can have no effect to defeat the title of those to whom the state may sell for failure to pay taxes. The state may sell at tax sale to whomsoever may bid, and the bidder will take whatever was assessed.

Under this circumstance it is not necessary to determine the alienation proposition in order to determine the plaintiffs' equitable rights. If the restrictions against use and occupation are valid the plaintiffs' rights may be fully protected by injunction whether the defendant is possessed of the naked legal title to the premises or not. The record does not disclose whether the original deed imposing the restrictions was limited or unlimited as to time. This may be important for the bearing it may possibly have under the statute against perpetuities. Also it may have possible bearing on the question of restraint on alienation, if within the period of the statute against perpetuities. The question is not fully briefed and such research as we have had time to make has only resulted in indicating the almost unlimited extent of the field that must be explored to reach a reasoned conclusion. The American Institute of Law has in course of preparation a volume of the Restatement of Property dealing with Restraints on Alienation that may make the question easier of solution when it is published. We will therefore pass this question until it comes up in a case wherein it is necessary to decide it in order to determine whether the plaintiff may have adequate relief.

(b) As to restriction (b), some of the cases that hold the restriction against sale to a non-Caucasian void as a restraint

against alienation also involve a restriction as to occupation. All these cases hold that the restriction against occupation is valid. Such cases are *White v. White, supra; Wayt v. Patee,* 205 Cal. 46, 269 Pac. 660; *Los Angeles Inv. Co. v. Gary, supra.* The following cases not involving a restriction against sale but involving one against occupation uniformly hold the latter valid. Such cases are *Janss Inv. Co.. v. Walden,* 196 Cal. 753, 239 Pac. 34; *Littlejohns v. Henderson,* 111 Cal. App. 115, 295 Pac. 95; *Schulte v. Starks,* 238 Mich. 102, 213 N. W. 102. All these cases grant equitable relief to enforce the restriction. Not every such restriction is necessarily reasonable. It may be that such a restriction might be held unreasonable when imposed. And such a one was held not subject to equitable enforcement by reason of changes in the immediate locality by influx of Negro residents after its imposition as in *Clark v. Vaughan,* 131 Kan. 438, 292 Pac. 783. In only one case is recovery of possession granted as in ejectment, and in that the restriction was in the form of a condition subsequent and the deed involved contained a clause for reversion to the grantor who imposed the restriction in case of violation of the restrictions. *Koehler v. Rowland, supra.* Although practically the same result is achieved in the other cases through rescission as in the *Cazeaux Case, supra,* or injunction as in *Corrigan v. Buckley, supra.*

(c) As to the restrictions under this head we have already indicated that they will be enforced, if reasonable, against a person holding under a title stemming from the grantor who imposed the restriction. This is the universal rule as to such persons, subject to modification as in *Clark v. Vaughan, supra,* where subsequent changes have made it inequitable to enforce them. The question remains whether they will be enforced against the grantee under a tax deed. As above stated, the tax-deed holder takes under another and independent source of title. The defendants claim that a tax deed passes title freed

from all restrictions against the use of land, just as it passes it free from liens. Whether this is so may be approached by consideration of the rule as to easements. By the weight of authority a tax deed passes the title of the deeded land subject to all easements to which it is subjected. This is so as to the easement of light and air. *Tax Lien Co. v. Schultze,* 213 N. Y. 9, 106 N. E. 751, L. R. A. 1915 D, 1115. Many New York Supplement cases are to this effect as to easements generally, among which are *Jackson v. Smith,* 153 App. Div. 724, 138 N. Y. Supp. 654, affirmed without opinion in 213 N. Y. 630, 107 N. E. 1079, and *Blenis v. Utica Knitting Co.* 73 Misc. 61, 130 N. Y. Supp. 740, 149 App. Div. 936, also so affirmed in 210 N. Y. 561, 104 N. E. 1127. To the same effect are *Metropolitan Life Ins. Co. v. McGurk,* 15 N. J. Misc. 572, 193 Atl. 696; *Ehren Realty Co. v. Magna Charta B. & L. Asso.* 120 N. J. Eq. 136, 184 Atl. 203; and *State v. West Cabanne Imp. Co.* 278 Mo. 310, 213 S. W. 25. There are cases to the contrary, *Hill v. Williams,* 104 Md. 596, 65 Atl. 413; *Hanson v. Carr,* 66 Wash. 81, 118 Pac. 927. The theory of the *Schultze Case, supra,* is that the value of the easement is in the dominant estate, and is taxed as a part of that estate; and that if the easement were cut off by tax sale of the servient estate the owner of the dominant estate would be deprived of his property without due process. Our decision in the recent case of *Union Falls Power Co. v. Marinette County,* 238 Wis. 134, 298 N. W. 598, is in accord with this view. We there held that a tax deed of land subject to a flowage easement did not cut off the easement. We there held in effect that the value of the flowage right was comprised in the dominant estate and assessable therewith, and not assessable as part of or with the servient estate. The flowage right not being assessable as part of the servient estate that right was not taxed and did not pass under the tax deed of the overflowed land. Were a positive easement here involved we would therefore hold that the easement was not cut off by

the defendants' tax deed. That rule was applied in case of a negative easement in the *Schultze Case, supra,* for the easement as to light and air is negative. 1 Bouv. Law Dict., Rawle's Third Revision, p. 969. No reason is perceived why the rule should not be applicable to negative as well as to positive easements, both being as to use of the servient estate. Restrictive rights against sale of liquor and use of premises as a saloon were held to be negative easements in *Northwestern Improvement Co. v. Lowry,* 104 Mont. 289, 66 Pac. (2d) 792. This is the only case we have noticed wherein it is definitely held that a restrictive covenant of the nature of that we are now discussing is a negative easement, but many cases treat it as an interest in land and call it an equitable servitude. In Clark, Covenants and Interests Running with Land, p. 149, it is said that two theories exist under which restrictive covenants are enforced in equity: (1) That they are contracts concerning land, and (2) that they are enforced "as servitudes or easements on land." The author states, page 153, that he "is of the view of Dean Pound and other learned writers that these restrictions be considered as servitudes, similar at least to easements . . . appurtenant to the land in the development scheme." The easement of light and air prohibits the use of the servient estate in such manner as to interfere with the right of the holder of the dominant estate to light and air. The instant right of the plaintiffs as owners of other lots to enjoin the violation of the use and building restrictions here involved is of the same nature as the right to prevent the erection of a building that would interfere with a light and air easement. While restrictive rights seem to have been considered not to be negative easements in *Re Hunt & Bell* (Canada), 24 D. L. R. 590, they were there conceded to be of "the nature" thereof, and if of the nature of negative easements no reason is perceived why they should not be held to be not cut off by a tax deed for the same reason that the light and air easement was held to be not cut off

by such deed in the *Schultze Case, supra.* In *Northwestern Improvement Co. v. Lowry, supra,* the theory of the *Schultze Case* is applied. It was held that the restrictive covenant enhanced the value of the other land in the tract involved, and that the enhanced value was taxed as part of those lands which constituted the dominant estate. Consequently the value of the easement was not taxed as part of the value of the land covered by the tax deed of the servient estate, and the tax deed left the servient estate subject to the restrictive covenants. So here, in principle, whether the interest in the land under the restriction be considered as an easement or not. The tax deed only cut off the interests in the land that were taxed against it. The interests in the land under the restrictions not having been taxed against the land, but against the lands to which they were appurtenant, were not cut off. The tax deed left those interests unaffected and conveyed the land subject to them. That a building restriction was not cut off by a tax deed was also held in *Lesley v. Morris,* 9 Phila. (Pa.) 110, and *Schlafly v. Baumann,* 341 Mo. 755, 108 S. W. (2d) 363. We are of the view that the defendants' tax deed does not free his land from the restrictive covenants as to the use and occupation thereof, although this is contrary to *Nedderman v. City of Des Moines,* 221 Iowa, 1352, 268 N. W. 36, relied on by the respondents and *Re Hunt & Bell, supra.*

The restriction covered in the *Northwestern Improvement Co. Case, supra,* p. 301, was declared in the deed creating it to be a condition and the deed provided that on its violation the land conveyed reverted to the grantor in the deed that imposed the restriction. It was further held in that case that "the possibility of reverter . . . was annihilated by the tax-deed proceeding." The tax deed was held to cut off the right of the plaintiffs in that case to repossess the premises. With greater reason the instant plaintiffs, whose chain of deeds contain no reverter clause, have no right to repossess the premises.

But the *Northwestern Improvement Co. Case, supra,* gave the plaintiff the right to enforce the restriction as to use by injunction, and that right the instant plaintiffs have. It is not necessary for their protection that they be vested with the title to or repossess the land, but it is necessary therefor that they as owners of land for whose benefit the restriction was imposed be given the right to enjoin the defendants from occupying the premises; from constructing or maintaining any structures on said premises not in conformance with the restrictions imposed by the original conveyance as to the use of said premises; and from causing or permitting the premises to be occupied for other than residential purposes or by others than members of the Caucasian race. And it appearing from the argument that the defendants have erected and are maintaining on said premises nonconforming structures, but the nature and extent of nonconformance not appearing from the findings of the court or the record, further proceedings should be had for determination of the facts as to nonconformance; and if nonconformance be found, the defendants should be required by mandatory injunction to remove nonconforming structures from the premises or to conform them to the restrictions of the said original conveyance if they can be conformed, in either case within such reasonable time as may be fixed by the court.

One other proposition discussed in the briefs requires consideration. The plaintiffs assign as error insertion in the judgment by direction of the court the requirement for payment of $75 costs instead of items of costs to be taxed by the clerk pursuant to tax bill and notice of taxation served. The action is an equitable action and in such actions costs are taxed pursuant to sec. 271.02 (2), Stats. Under the plain terms of that statute the court might allow costs up to $100 and disbursements. He allowed $75 costs and no disbursements. As no disbursements were allowed there was no need to tax costs or serve a cost bill. As the judgment is to be,

reversed we would not mention this matter except to avoid raising the point again by appeal by indicating that if the court on entering judgment as now directed shall allow a fixed amount under $100 as costs without disbursements in addition, it will be in accordance with the statute cited, and no costs bill need be served or costs taxed.

*By the Court.*—The judgment of the county court is reversed, and the record is remanded for further proceedings and findings as directed and entry of judgment in accordance with such further findings and opinion.